## RAILWAY COMPANY *v.* TRIPLETT.

Decided March 7, 1891.

1.  *Master and servant—Negligence—Co-servants.*
    A master is not liable to a servant for an injury occasioned by a co-servant's negligence if the injury was one of the ordinary or probable risks assumed by the servant in the contract of employment.

2.  *Duty of master—Protection to servant.*
    Where a car-repairer was engaged in work under a car so situated that a jar from an approaching car would cause it to fall and crush him, it is the duty of the company, when apprised that its regulations are insufficient to protect him, to adopt such measures as will afford him reasonable protection against the dangers incident to the performance of his duties.

3.  *Duty of master—Delegation to co-servant.*
    Where the company delegated to a yard-master its duty to protect the car-repairer, it will be responsible for his negligence in the performance of that duty.

4.  *Contributory negligence.*
    Where complaint had been made to the proper official of the company that its regulations were insufficient to protect him, and the company had indicated that it would correct the evil, the car-repairer was justified in remaining in the service of the company.

5.  *Instruction—Error without prejudice.*
    Where the facts were undisputed, and the verdict could not have been different if the jury had been correctly instructed, the cause will not be reversed for an error in the court's instruction.

6.  *Pleading—Aider by proof.*
    Where both parties direct their evidence to the same issue, a defective complaint will be considered as amended to conform to the proof.

APPEAL from *Jefferson* Circuit Court.

JOHN A. WILLIAMS, Judge.

Action by C. H. Triplett, administrator of T. J. Brown, deceased, against the St. Louis, Arkansas and Texas Railway Company, to recover damages for personal injuries resulting in death. The facts are stated in the opinion.

*J. M. & J. G. Taylor* and *Sam H. West* for appellant.

1. The duty of the railroad ended *when it exercised ordinary care* to provide the deceased with a reasonably safe place in which to prosecute his work; and it did not guar-

antee that such place, obviously dangerous, should prove reasonably safe. Sh. & Redf. on Negl., 103; 35 Ark., 614; 25 Am. & E. R. Cas., 518, note; 48 Ark., 474; *ib.*, 345. It was necessary to allege and prove that the accident arose because of some failure to discharge a duty which the company owed deceased, and that the failure to perform such duty was the proximate cause of the accident. 41 Ark., 382. If the company furnished a safe place and instruments, it is not liable for the negligence of co-employes. 24 Am. & E. Cas., 453.

2. A railroad is not liable for the negligence of a fellow-servant. 4 Metc., 49; Wood, Mast. & S., sec. 427 *et seq.* As to who are fellow-servants is well stated in 3 Wood, Ry. Law, sec. 388, p. 1500. It is laid down that the true test is "subjection to the same general control and co-operation to secure a common result." 6 Rep., 264; 109 U. S., 478; 24 A. & E. R. Cas., 455. Yet the court told the jury in the fourth instruction, that deceased was *not* a fellow-servant, and consequently the railroad was liable. This was error. 84 N. Y., 77; McKinney on Fellow-Servants, 310; 46 Ark., 388; 92 Ill., 43; 51 Ark., 477. The negligence of fellow-servants is one of the risks arising from his employment which the employe undertakes. Cases *supra*; 24 A. & E. Cases, 428; 10 Allen, 236; McKinney F. S., sec. 124; Whit. Smith on Neg., p. 139, and note; 17 N. W. Rep., 422; 48 Ark., 474. The duty of the master is to supply the servant with suitable and safe machinery and appliances, with competent and skilful co-workers, and to make and promulgate sufficient rules and regulations for the conduct of its business, etc. 5 A. & E. R. Cases, 524; 25 *id.*, 507; 58 N. Y., 217; 53 *id.*, 549; 53 Ill., 336; 25 A. & E. R. Cases, 511, and note, p. 513. Who are fellow-servants is a question of fact, not of law, and should be left to the jury. 110 Ill., 216; 12 Am. & E. R. Cas., 228; 17 *id.*, 564; 88 Pa. St., 260; Rorer on Railroads, p. 831; 133 U. S., 374. It devolved on appellee to prove that the injury happened because the railroad did not exercise proper care in the prem-

ises.   44 Ark., 529.   Even if it devolved on the company to use red flags as danger signals, yet Brown went about his work knowing full well that none were used, and that such was not the custom of the company, and thus assumed the risk incident to the enforcement of such rules as the company had adopted.   150 Mass., 478;  30 Wisc., 674–8;  50 *id.*, 462;  45 *id.*, 98;  75 Ill., 106;  5 Oh. St.,  541;  25 N. Y., 562;  44 Cal., 187.   These cases show that if deceased knew the manner of doing business in defendant's yard and remained in its employ after such knowledge, then he could not recover for injury resulting from such management.   5 A. & E. R. Cas., 472;  53 Wisc., 74;  5 A. & E. R. Cas., 469;  74 Ind., 440.   See also McKinney on F. S., p. 101;  92 Pa., 276;  5 A. & E. R. Cas., 508, and note;  Rorer on R. R., p. 703.

*M. A. Austin* for appellee.

The proximate cause of the death of Brown, appellee's intestate, was the direct result of four separate and distinct acts of negligence on the part of appellant railway company.   First—In not keeping danger signals on all the cars on the same track, while Brown was engaged in working under them.   Second—In not keeping the switch leading to the track on which these cars were standing securely guarded, or locked, while cars were undergoing repairs. Third—In permitting its servants to change the switches to such tracks, and run in its engines and cars on this track while Brown was engaged in such repairs, without giving him reasonable warning of the danger that might result from such acts of its servants.   Fourth—In going in on this track with its engine and cars, and causing the death of Brown.

Brown and the switchman and engineer were not fellow-servants, but the servants of the same master in a different employment.   The injury was not one of the ordinary risks of the employment.   24 Am. S. Rev., 190;  1 McM., 385;  112 U. S., 377–383.   The doctrine of fellow-servants does not apply in this case.   Brown contracted without contem-

plating the risks resulting from the negligence of those running the engines. He did not regard it as a risk. The company neglected to advise him of the risks by the promulgation of rules governing these repair tracks. Sh. & Redf. on Negl. (2d ed.), 118; Beach on Cont. Neg., sec. 141; Kirkman on Ry. Serv., 258; 91 N. Y., 332; 69 Ill., 464. See also 15 A. & E. R. Cases, 325; Sher. & Redf. on Negl., p. 18; 48 Ark., 345; 100 U. S., 213; 110 Mass., 241; 116 *id.*, 417; 55 Vt., 84; 66 Me., 420; 107 N. Y., 374; 59 Tex., 334; 80 Ind., 281. It was the railroad's duty to provide Brown with a safe place to work. It was its duty to protect him from the carelessness and negligence of its servants. He had the right to rely upon this. Having failed in its duty, it cannot rely upon the doctrine of fellow-servant. McKinney on F. S., pp. 60, 61, 62; 83 N. Y., 7; 24 *id.*, 410; 36 Ohio St., 222; 20 Fed. Rep., 87; 17 Am. L. Reg., 616; 69 Ill., 461; 39 Ark., 17; 44 *id.*, 524; 53 N. Y., 549; 5 M. H. & G., 352. Where the master has been negligent in performing a duty, he cannot escape liability by saying that it was the negligent act of his servants. 73 N. Y., 38; 106 U. S., 700; 5 Vroom, N. J., 151.

JOHN FLETCHER, Special J. This is an appeal from a verdict and judgment against the railway company for $5000 damages, sustained by the death of appellee's intestate, T. J. Brown, while in the employ of appellant. Brown was a car-repairer employed at the shops of the railway company at Pine Bluff. Near the shops and within the yard limits of the company were situated what are known as repair tracks, on which cars badly crippled and requiring much time to repair are placed. These tracks were under the supervision and control of the foreman of repairs. By the rules of the company, no switchman or engineer was permitted to go upon these tracks for the purpose of switching cars without permission from the foreman of repairs, and he was not supposed to give such permission when men were at work on the track.

The yards of the company are under control of the yard-master. " He has entire supervision of the yard, charge of all trains and cars while in the yard limits, and the placing and disposition of all cars, subject to the order of the super-intendent or agent. He does all the necessary switching and anything else that may turn up in that way." He hired and controlled and had the power to discharge the switch-men and engineers at work on the yards. The car-repairers were hired by, and were nnder the immediate supervision of, the master mechanic.

It was the rule of the company for the yard-master at 1 p. m. every day to send a switchman and engineer with an engine to the foreman of repairs, with instructions to do such switching of cars on the repair tracks as might be re-quired, at which time the foreman of repairs would instruct them what cars to take off and what to put upon the repair tracks and where to place them.

At the usual hour on the day of the accident, the yard-master sent a switchman and engineer with an engine, who as usual reported to the foreman of repairs and received from him the number of cars to be switched and instruc-tions where to place the same. At the same time the fore-man of repairs pointed out to them the fact that Brown was at work under a car jacked up on one of the tracks, and told them not to go upon that track. The foreman of re-pairs returned to his office near by, and within twenty or thirty minutes afterwards the switchman threw the switch and caused a train of cars to be backed upon the track where Brown was at work, and, without warning to him, the train struck the car under which he was at work and caused it to fall upon and kill him.

It is claimed by the railway company that the switchman and engineer were fellow-servants with Brown, and no liability can attach to the company by reason of their negligence.

<div style="text-align: right; font-size: smaller;">1. Liability of master for co-servant's negli-gence.</div>

The rule which exempts the master from liability for an injury to a servant occasioned by the negligence of a fellow-

servant is now firmly established. The court and text-writers, however, have found great difficulty in giving an accurate and satisfactory test by which to determine who are fellow-servants within the meaning of the rule.

It is said generally that fellow-servants are those engaged under the control of the same common master and in the same common business, or, to use the terms of several text-writers, " same common pursuit " (3 Wood's Railway Law, sec. 388), " same general business " (2 Thompson on Negligence, p. 1026), " accomplishing the same common object " (Beach on Contributory Negligence, p. 338, sec. 115).

But when we undertake to determine what is essential to render the service common to all, within these terms or expressions, we find the cases numerous and contradictory. It would be beyond the scope of this opinion to undertake to review or to reconcile them.

It would seem that a test approximately applicable to all cases can only be found in the reasons in which the rule itself is based.

Here again we find the courts not entirely harmonious.

One of the reasons assigned for the rule 'is that of supposed public policy which assumes " that the exemption operates as a stimulant to diligence and caution on the part of the servant for his own safety, as well as that of the master." " Much potency," says Mr. Justice Field, in the case of *Chicago, etc., R. Co.* v. *Ross,* 112 U. S., 377, " is ascribed to this assumed fact by reference to those cases where diligence and caution on the part of the servants contribute the chief protection against accident. But it may be doubted whether the exemption has the effect thus claimed for it. We have never known parties more willing to subject themselves to dangers of life or limb because, if losing the one or suffering in the other, damages could be recovered by their representatives or themselves for the loss or injury. The dread of personal injury has always proved sufficient to bring into exercise the vigilance and activity of the servant." Some of the courts, however,

assuming this reason to be the basis of the rule, have drawn from it the conclusion that those only are fellow-servants, who are so consociated in the discharge of their duties that they can exercise an influence upon each other promotive of caution, because, as they say, the reason of the rule ceasing, its application should also cease.

Out of this has arisen the doctrine of separate departments, by which a distinction is made between those servants engaged in the same department, and those engaged in different departments, of the same general business. *Chicago & N. W. R. Co.* v. *Moranda*, 93 Ill., 302; S. C., 34 Am. Rep., 168 ; *Cooper* v. *Mullins*, 30 Ga., 150; *Louisville, etc., R. Co.* v. *Collins*, 2 Duv. (Ky.), 114; *Nashville, etc., R. Co.* v. *Jones*, 9 Heisk. (Tenn)., 27; McKinney on Fellow-Servants, sec. 72, and cases cited.

The reasoning of these courts is not without weight and in given cases is strongly persuasive, as reflecting light upon the nature of the risks assumed by the servant and the obligations of the master to protect him against such risks.    But when it is sought to make the question whether or not the servants are engaged in the same or different departments an arbitrary test by which to determine the liability of the master, the results reached must often be unsatisfactory. It leads to confusion and possible absurdities.

It is not difficult to conceive of instances where servants engaged in the same department of business may have no opportunity to observe the habits or to exercise an influence upon each other; or where servants in different departments may have opportunity to observe and influence the conduct of each other; or where the dangers naturally arising from the negligence of each may be as great in different as in the same department of business.

As said by the Supreme Court of Rhode Island in *Brodeur* v. *Valley Falls Co.*, 17 Atl. Rep., 55, there is "an obvious impracticability in trying to gauge the liability of an employe, in a complex business, by the independence of its different branches, or by the intercommunication of those

employed.  Not only would it be impossible, in many cases, to separate the work into distinct departments, and to discern their dividing lines, but incidental duties, changing the relations of workmen to each other, would vary also the master's liability.  He would thus be liable for the negligence of a servant at one time or place, and not at another. Without a personal supervision of all his help in all their work, he would not know when he was responsible and when he was not.  Moreover, such a rule would govern the liability of a master when the groundwork upon which the rule is founded did not exist.  For, if the test of liability be that of the separate and independent duties of the servants, they may nevertheless be so near each other as to be able to exert a mutual influence to caution; or, if it be that of association, they may still be in the same department, but unable, from their duties or position, to exert such influence."

The true reason on which the rule is based, as shown by the great weight of authority, is that a person who voluntarily engages in the service of another presumably assumes all the risks ordinarily incident to that service, and fixes his compensation with a view to such risks.  *Randall* v. *B. & R. Co.*, 109 U. S., 478; Wood on Master and Servant, sec. 326; Underhill on Torts, p. 52; *Farwell* v. *Boston & Worcester R. Co.*, 4 Metc. (Mass.), 49.  See note 5 to sec. 72, McKinney on Fellow-Servant, where the authorities are cited: *Campbell* v. *Pennsylvania R. Co.*, 24 Am. and Eng. Ry. Cases, 427; *Railroad Co.* v. *Fort*, 17 Wall., 553.

If this be the principle underlying the rule, it would seem that the question which forms a test in any case is one of risks.  And that where one servant is shown to have been injured by another, the question is, not whether the two servants were fellow-servants in any technical sense of the term, but *whether the injury was within the risk ordinarily incident to the service undertaken.*  "The negligence of a fellow-workman engaged upon a common work is commonly accounted among the risks undertaken, but is only a subordi-

nate instance. *Lawler* v. *Androscoggin R. Co.*, 16 Am. Rep., 498.

"A fellow-servant," says the court in *McAndrews* v. *Burns*, 39 N. J. L., 117, "is any one who serves and is controlled by the same master. Common employment is service of such kind that, in the exercise of ordinary sagacity, all who engage in it may be able to foresee, when accepting it, that through the carelessness of fellow-servants it may probably expose them to injury."

Or, as more fully expressed by Williams, J., in the case of *Baird* v. *Pettit*, 70 P.a. St., 477, 482 : "Servants, it is said, are engaged in a common employment when each of them is occupied in service of such a kind that all the others, in the exercise of ordinary sagacity, ought to be able to foresee, when accepting their employment, that it may probably expose them to the risk of injury in case he is negligent. That this is the proper test is evident from the reason assigned for the exemption of masters from liability to their servants, viz.: that the servant takes the risk into account when fixing his wages. He cannot take into account a risk which he has no reason to anticipate, and he does take into account the risks which the average experience of his fellows has led him as a class to anticipate."

Judge Dillon, after discussing this subject in an article published in 24 Am. Law Rev., 190, concludes : "The real inquiry is: *Was the injury caused by another servant one of the ordinary risks of the particular employment?* If so, the mere grade, whether higher, lower or co-ordinate, or the department of the faulty servant, is of no consequence.

"It is a condition of contract of service that the servant takes upon himself the risk of accidents in the *common course of the business,* all open and palpable risks, including the negligence of all fellow-servants of whatever grade in the same employment.

"The true inquiry in each case is, Was the accident one of the normal and natural risks in the ordinary course of business? If so, then there is no common law liability on

the part of the employer; if not, there is such liability; and the inquiry, except as it bears on the above, is not one of grades or departments. This is the final form the doctrine has assumed, and it is the correct one. It is plain, intelligible and practical. It is founded upon just principles, viz., that it is precisely commensurate with the master's personal duties."

The court, by its fourth instruction to the jury given in behalf of the plaintiff, said: "If the jury believe from the evidence in the case that the deceased was engaged in the business of repairing cars on a repair track, and was in no way connected with the running of cars, and had nothing to do with the cars being near, then he was not a fellow servant of those engaged in running the cars; and if his injury was occasioned by the negligence of an employe of the company who was engaged in running the cars, the company was liable." This was error. The fact that Brown "was in no way connected with the running of cars, and had nothing to do with the cars being near," or that he was engaged in a separate department from that of those engaged in moving the cars, should not control the other facts, viz., that the track on which he was at work, and those on which the duties of the switchman and engineer were being performed at the same time, were in close proximity to each other, converging with their switches near the same point, so that the negligence or inadvertance of the switchman in operating the switches and moving the trains was liable to endanger him.

The fact that the switchman and engineer were not permitted, under the rules of the company, to go upon the track while Brown was there at work, only removed the probability of danger from their negligence to the extent that their efficiency or carefulness might cause them to observe these rules.

It is said that because the rules of the company forbade the yardmen to enter upon this track, Brown had a right to rely upon the company to keep them out, and therefore the

risk of their failure to keep out was not one of the risks assumed in his contract of employment.

But if the company owed him any duty in this respect and has failed to discharge that duty, by which it has in any manner contributed to the injury, it is liable by reason of its own negligence, notwithstanding the negligence of a fellow-servant may have been the immediate or direct cause of the injury.

2. Duty of master to protect servant.

"It is indispensable to the employer's exemption from liability to his servant for the consequences of risks thus incurred that he should himself be free from negligence. He must furnish the servant the means and appliances which the service requires for its efficient and safe performance, unless otherwise stipulated ; and if he fail in that respect, and an injury result, he is as liable to the servant as he would be to a stranger.   In other words, whilst claiming such exemption he must not himself be guilty of contributory negligence." *Chicago, Milwaukee & St. Paul R. Co. v. Ross,* 112 U. S., 377, 383.

It was the duty of the railway company in this case, by the exercise of ordinary care, to provide Brown with a safe place in which to work.   It is conceded that the repair track within itself was a safe place.   But, if unprotected from intrusion by the yard men, it was obviously unsafe.

To obviate the danger from this source, the company established the rule which required the switchman and engineer to keep off the track except by permission of the foreman of repairs.   It is claimed by the company that if this rule was sufficient, when faithfully observed by its employes, to guard against the danger, the company has discharged its duty.  *International & G. N. R. Co.* v. *Hall,* 15 S. W. Rep. (Tex.), 108.

This seems to be the general rule of law, when the circumstances are such that a reasonably prudent person might rely upon rules and regulations to afford protection.   But if the master sees proper to rely upon such methods of protection to his servants, and the occasion demands it, he

should also adopt such measures as may be reasonably necessary to secure the observance of such rules. The fact that rules have been adopted is only evidence of the degree of care and diligence exercised by the master in any given case. Wharton on Negligence, sec. 221; Wood on Master and Servant, sec. 370; *Madden* v. *C. & O. R. Co.*, 28 W. Va., 610; *Moore* v. *Wabash, etc., R. Co.*, 85 Mo., 588; *Criswell* v. *Railway Co.*, 30 W. Va., 798; *Lake Shore, etc., Ry. Co.* v. *Lavalley*, 36 Ohio St., 221; *Ohio & M. R. Co.* v. *Collarn*, 73 Ind., 261; S. C. 38 Am. Rep., 134.

The degree of care must always be measured by the exigencies of the particular case. Wood on Master and Servant, sec. 359; *Hough* v. *Railway Co.*, 100 U. S., 213.

Brown was required to do needed work under a car jacked up so that a jar from approaching cars would necessarily cause it to fall and crush him. He had no opportunity to look out for the approach of intruders. His mind, if he performed well his duty, would necessarily be absorbed in his work, and he became oblivious to danger. He would rarely, if ever, detect the approach of an engine or cars. He was entirely helpless, so far as any precautionary measures that he might take to protect himself were concerned. He had to rely entirely upon the company for protection His life, as it were, was in its keeping. What steps should it have taken to protect him from danger? It is not a question of rules and regulations. Protection was what he needed, and to this end he had a right to rely upon the company for the exercise of that degree of care which a person of ordinary prudence would exercise in view of the extreme and obvious hazard to which he was exposed.

One of the precautions taken by some of the railroad companies in such cases is to place locks upon the switches. Had the company in this case adopted such precaution, we presume no question could have been raised as to its sufficiency. The company, however, instead of locks, adopted the rule referred to.

This rule proved insufficient to keep the men out. They either wilfully violated it or through negligence failed to observe it, and, about two months before the accident occurred, complaint was made by the master mechanic (Bergold) to the master of transportation, in whose department the yard-master and yard men were at work. Thereupon the master of transportation wrote a letter to the yard-master which, omitting the address and signature, is as follows : " Please note attached complaint from Mr. Bergold and manage to correct it. I instructed you some time ago about your men going in on the repair track without permission from the foreman. If you have instructed them in this matter, dismiss the man in fault ; as everybody must understand that orders must be obeyed. I have written Mr. Bergold today that you would have a man on hand each day at 1 p. m. to go with engine and hostler, as he suggests, and pull the repair track. You had better manage to be there yourself as much as possible. When this is done, answer, so that I will know that you fully understand what I want."

Here the company is shown to have notice of the violation of the rule, and it must have taken cognizance that the regulation it had provided was insufficient to afford protection, unless rigidly enforced. It became the duty of the company then to take the necessary steps to correct the evil and obviate the injury. Cooley on Torts, 559; Wood on Master & Servant, secs. 378–380; *Hough* v. *Railway Co.,* 10 Otto, 213 ; *Patterson* v. *P. & C. R. Co.,* 76 Pa. St., 389, (18 Am. Rep., 412); *Conroy* v. *Vulcan Iron Works,* 6 Mo. App., 102; *Laning* v. *N. Y. Cent. R. Co.,* 49 N. Y., 521.

The only additional precaution taken was to fix an hour at which switching should be done on these tracks, and to again instruct the men to report at that hour to the foreman of repairs for instructions and not to go upon the repair tracks without his permission. The yard-master says he carried out the order of the master of transportation as far as possible ; but when asked the question, " What precautions were taken to protect the men in working on those re-

pair yards, so far as switchmen are concerned?" he answered: "Well, that I don't know, whether there were any or not; any more than the general precaution that men must not go there without getting the consent of the foreman of the car repairers. If he told them to go, it was all right; if the foreman told him he must not, he must not go."

3. Delegation of master's duty to co-servant    The master of transportation evidently had a clear apprehension of the danger of entrusting this work to the ordinary employes at work on the yards, and he saw the necessity for a personal supervision of the work by the yard-master himself, when he said to him, "You had better arrange to be there yourself as much as possible." This, if not a positive command, was sufficient to indicate to the yard-master the necessity for his personal supervision of the men under his control at that hour, in order to secure a faithful observance of the rule. It was his duty to do so. His convenience or the details of his business, at this hour when the lives of men who were looking to the company for protection were endangered, should have been subordinated to the more important duties of the master. In this respect he was not merely a co-laborer with Brown. He was performing duties which would have been required of the master if present, the personal oversight and supervision of the men under his control. *Kirk* v. *Railway Co.*, 25 Am. & Eng. Ry. Cases, 520; *St. L., I. M. & S. Ry.* v. *Harper,* 44 Ark., 530; *Heine* v. *C. & N. W. Ry. Co.,* 17 N. W. Rep., 422; *Lake Shore, etc., Ry. Co.* v. *Lavalley,* 36 Ohio St., *supra; Chicago, etc., R. Co.* v. *Ross,* 112 U. S., *supra; Ohio & Mississippi Ry. Co.* v. *Collarn,* 73 Ind., *supra;* S. C., 38 Am. Rep., 134; Wood on Master & Servant, pp. 867–8.

The fault may be traced if necessary to a higher source— the master of transportation. When he saw the danger and the necessity for the yard-master's presence, his orders should have been to go, or he should have adopted other positive precautionary measures to meet the difficulty.

The fact that the foreman of repairs had, but a few moments before the accident, admonished the switchman not to go upon the track, only demonstrates the insufficiency of the precautions taken by the company, and confirms the apprehensions of the master of transportation, when he suggested the necessity of the yard-master's presence. The switchman knew, without being admonished, that he had no business on this track, unless directed by the foreman of repairs to go there.

Contributory negligence is not attributable to Brown for remaining in service of the company. After attention had been called to the fact that the rules were not observed and the company had indicated that it would correct the evil, he had a right, under the circumstances, to rely upon the company to take all necessary steps to protect him. *Cook* v. *St. P., etc R.. Co.,* 24 N. W. Rep., 311; *Russell* v. *Railway Co.,* 20 N. W. Rep., 147 (32 Minn., 230); Wood on Master and Servant, sec. 352.
<span style="float:right">4. Contributory negligence.</span>

The rule which exempts the master from liability to a servant for the negligence of a fellow-servant is founded upon principles of justice; and although apparent *hardships* may arise in its application, yet, if administered in strict harmony with the master's duties to the servant, no *injustice* will be done.

There was no conflict in the evidence; the facts were undisputed, and clearly supported the conclusion that the company had been negligent in performance of its duty in affording protection to the deceased, and that this neglect contributed to the injury. The verdict could not have been otherwise than for plaintiff, notwithstanding the error of the court above indicated. If the jury had been instructed as to the law, as indicated in this opinion, and had found a verdict for the defendant, we could not have sustained it on the facts presented. We see no occasion for remanding the case for a new trial, and affirm it, notwithstanding the error.
<span style="float:right">5. Error without prejudice.</span>

OPINION ON MOTION FOR REHEARING.

Filed May 9, 1891.

6. When pleadings aided by proof.

FLETCHER, Sp. J.    The ground for recovery alleged in the complaint in this case is that "the defendant so carelessly and negligently managed and operated its train and cars that they passed over the body of the deceased, and thereby, without the fault of the deceased, he was killed."

At the trial, evidence was introduced without objection to show on behalf of the plaintiff that the railway company had failed to afford a proper and safe place for the deceased to work, and had not exercised proper care in affording him protection against the carelessness of his fellow-servants. The company introduced evidence on the same issue.    In fact, the burden of the evidence in the case was upon this issue.    It was made one of the leading issues on the proof before the jury.    The facts thus developed were undisputed, and the court gave instructions on both sides as to the law bearing upon the same.

Counsel for appellant now insist, in an earnest and vigorous argument, that this court erred in considering on appeal the issue thus made, and that it is not proper to affirm the judgment on this issue.

The point was directly ruled against the contention of counsel in the case of *St. L., I. M. & S. Ry. Co.* v. *Harper*, 44 Ark., 527, where the court say:    "The appellee, while in the discharge of his duty as watchman for the railroad, in its yards at Texarkana, was injured by the explosion of the boiler of one of the company's locomotives.    Critically considered his complaint charges an injury to a servant by a co-servant, and nothing more.    It is the well established rule of this court that the master cannot be made to respond in damages for this.    The defendant, however, made no objection to the sufficiency of the complaint, but denied knowledge of defects in the exploded engine, as well as a want of care on its part, and permitted the plaintiff to introduce evidence tending to show that the boiler of the engine-

which caused the injury was defective, and that the agents of the company who were charged with the duty of repairing it ought to have known of the defects.   After verdict for the plaintiff, the complaint may be considered as amended to conform to this proof, and the defendant can take nothing by the motion in arrest of judgment."

Other questions are presented in the motion and argument for reconsideration, all of which were either directly or indirectly considered in the opinion in this case.

The motion to reconsider is overruled.