## BLOYD *v*. RAILWAY COMPANY.

Opinion delivered July 1, 1893.

*Master and servant—Negligence of vice-principal.*

> The foreman of a squad of railroad workmen, whose charge extends to building and repairing many trestles and bridges, who has the power to employ and discharge the men, and whose duty it is to oversee and direct their work, is so far a vice-principal of the railroad company that the latter will be liable for his negligence in giving inconsistent orders to the men whereby one of them is injured.

Appeal from Carroll Circuit Court, Western District.

EDWARD S. McDANIEL, Judge.

Action by Jesse Bloyd against the St. Louis & San Francisco Railway Company for personal injuries caused by defendant's negligence while plaintiff was in its employment. The facts are stated in the opinion.

*J. D. Walker* and *Crump & Watkins* for appellant.

Munden was a vice-principal, and represented the master, and was not a fellow-servant with appellant. An injury resulting from his negligence was not a risk assumed by appellant. 24 Am. L. Rev. 190 ; 54 Ark. 292; 112 U. S. 377 ; 84 N. C. 309 ; 3 Sawy. 437 ; 56 Ga. 645; 121 Mass. 121 ; 76 N. C. 6 ; 10 Fed. Rep. 711; 4 Pac. Rep. 121 ; 4 N. W. Rep. 399; 31 Oh. St. 287 ; 5 *Id.* 541 ; 8 *Id.* 249 ; 17 *Id.* 197 ; 53 Tex. 206 ; Whart. Neg. p. 205; 74 Mo. 13 ; 1 Sh. & Redf. Neg. (4th ed), sec. 226; 108 Ill. 280 ; 20 Oh. 415 ; 52 Conn. 285 ; 78 Va. 745; 24 W. Va. 37 ; 2 Duvall, 114; 9 Bush, 559 ; 9 Heisk. 866 ; 85 Mo. 588 ; 20 N. W. Rep. 198 ; 25 *Id.* 921; 37 La. Ann. 650 ; 16 Neb. 254; 3 McCrary, 352 ; 17 A. & E. R. Cases, p. 514 and note.

*E. D. Kenna* and *B. R. Davidson* for appellee.

1. The complaint did not state a cause of action ; it failed to negative the fact that Munden and plaintiff were co-servants. 55 Wis. 453 ; 44 Ark. 527 ; Wood, Mast. & S. sec. 419.

2. The order to move forward was proper—if it was not properly obeyed, it was the fault of the engineer who was a co-servant of plaintiff. 42 Ark. 420 ; 72 Ill. 256.

3. The doctrine of fellow-servants was laid down in 3 M. & W. 1, and was first applied to railroads in 5 Exch. 343, and has been followed in America, with but few exceptions. 1 McMul. (So. Car.) 385; 4 Met.

(Mass.), 49; 36 Am. Dec. 279; 67 *id.* 589. Kentucky, Ohio and possibly a few other States, have endeavored to evade the force of the rule, but *superiority of grade* affords no test. 123 Mass. 152; 82 Pa. St. 432; 62 Me. 463; Wood on Master & Serv. secs 435, 846, 847; 2 Rorer on Railroads, 1196; Wharton on Neg. sec. 229; 42 Ark. 421. This State has not followed the cases. holding the superiority or rank or grade rule, but makes the *duty neglected* or *act performed* determine the question, regardless of rank or different departments, etc. See 39 Ark. 17–42; 41 *id.* 393; 44 *id.* 527; 46 *id.* 398; 51 *id.* 467; 54 *id.* 296. Munden was a mere *foreman of part of a bridge gang,* and he and the gang were all working under Bradley, the bridge-master. Munden was not performing *a master's duties.* Cases *supra;* 58 Wis. 525; 22 Ind. 26; 4 Am. Law Rev. 1890.

4. Plaintiff was clearly guilty of contributory negligence in walking deliberately in front of a train when he had heard the order to go forward. 46 Ark. 403; 55 Wis. 405.

MANSFIELD, J. The appellant brought this action to recover damages for an injury sustained while performing labor for the appellee as one of a squad of men engaged in sharpening and driving piles at a trestle on the appellee's road. The timber used for the piling, together with the machinery employed in the work, was carried to the trestle by a train consisting of an engine, caboose and several flat cars; and it was one of the duties of the appellant to assist in unloading the cars. He and the other pile drivers worked under the immediate direction and control of M. C. Munden, who was their foreman, and who had power to employ and discharge them. Munden had no power to employ or discharge the train crew; but they were also subject to his orders while actually in the field and co-operating with his men in building and repairing trestles. In a general

sense, the work on trestles was done under the supervision
of one Bradley, who was the defendant's superintendent
of bridges. But it does not appear that Bradley was at
any time present when work was going on, or that he ever
personally supervised the labor of the gang, or exercised
any direct control over them. Bloyd was employed by
Munden, and, so far as the evidence discloses, he and the
other men of the squad to which he belonged had no
knowledge of any other superior or master in the ser-
vice. Munden seems to have performed no labor what-
ever in common with the men he controlled. His busi-
ness was to oversee and direct their work, and it was
their duty to obey his orders.

On the day the injury complained of was received,
three flat cars loaded with piles were placed in front of
the engine and taken to the trestle. These cars were
pushed to the north end of the trestle, where they
were detached and left standing, while the engine with
four flat cars behind it was backed about seventy-
five yards and stopped where a part of it rested
on the south end of the trestle. Bloyd and the other
men were then ordered by Munden to go from
the caboose to the front cars and unload them, which
they did. When they had finished unloading the front
cars, Munden ordered them to go back and unload the
cars behind the engine, and about the same time directed
the train-men to move forward one or two car lengths.
The witnesses are not agreed as to whether the order
to the men on the front cars to go back, and that to the
train-men to move forward, were given without a pause
or not. Bloyd himself testified that he and others
started back at once on receiving the order, and that,
before they had gone half way to the engine, Munden
ordered the train to advance. Whatever the fact may
have been as to the exact time of the order to the train-
men, the engine moved forward while Bloyd and several

others were still on the trestle between the engine and the unloaded cars ; and Bloyd, who was probably not seen by the engineer, in his effort to escape was struck by the step of the engine and knocked off the trestle. He fell upon the unloaded piling 17 or 18 feet below the trestle, and one of his feet was broken by the fall. This was the injury sued for, and the complaint alleges that it was caused by the negligence of Munden. The cause was pending here on appeal at the time of the passage of the act defining who are fellow-servants and who are not, approved February 28th, 1893, and the question to be decided is not therefore affected by any provision of that statute.

It is not necessary to detail all the facts bearing upon the questions of negligence and contributory negligence, presented by the pleadings. Of these it is sufficient to say that if, as a matter of law, the negligence of Munden was imputable to the defendant, a verdict for the plaintiff could not have been disturbed here for the want of evidence to support it. It therefore becomes our duty to inquire whether the finding of the jury was made under a correct charge as to the relation which Munden and the plaintiff bore to each other as employees of the railway company. The facts establishing that relation are not in dispute ; and the court's charge was to the effect that Munden was the fellow-servant of the plaintiff, and that the defendant was not therefore liable for his alleged negligence.

All the authorities approve the doctrine that a master is exempt from liability to his servant for an injury to the latter resulting from the negligence of a fellow-servant. But there is great diversity of opinion as to the precise facts which make one person the co-servant of another, in the sense essential to the exemption. (*Railway Co.* v. *Triplett*, 54 Ark. 289.) And it seems that the courts have been inclined to determine

whether the relation exists, or does not exist, according
to the circumstances of each case, as it arises, rather
than to formulate any rule of general application.*
On the facts of this case, the material question is
whether Munden was a mere foreman, overseeing a gang
of laborers, or was an agent of the company, clothed
with its authority in the management and supervision of
such part of its business as to make him the company's
representative.    If he occupied the former position, the
laborers had assumed the risk of his negligence; but in
the latter case he was a vice-principal, and if he was
guilty of negligence in that capacity the company is
liable.   *Dobbin* v. *Railroad Co.* 81 N. C. 446; *Fones* v.
*Phillips*, 39 Ark. 39.

In some of the adjudged cases the distinction be-
tween the relations indicated by the words foreman and
vice-principal is apparently made to depend more upon
the extent or magnitude, than upon the nature, of the
work of which the offending servant has charge.   *Tay-
lor* v. *Railroad Co.* 22 N. E. Rep. 876, 878; *Borgman*
v. *Railway Co.* 41 Fed. Rep. 667; *Hunn* v. *Railroad Co.*
78 Mich. 513; *Balt. & O. R. Co. v. Baugh*, 149 U. S.
368.    Other courts, proceeding upon what we think
a sounder principle, have attached no importance to the
extent of the work, but have considered only whether it
was such as required a skillful or careful supervision;
and where such supervision was necessary to the safety
of the laborers engaged upon the work, they have held

---

*Beach, Contrib. Neg. sec. 333; *Hunn* v. *Railroad Co.* 78 Mich. 518;
*Randall* v. *Railroad Co.* 109 U. S. 483; *Chicago, &c. Railroad* v. *Ross*,
112 U. S. 387, 389; *Hough* v. *Railway Co.* 100 U. S. 216; *Balt. & O. R.
Co.* v. *Reynolds*, 6 U. S. Appeals, 75; *Dobbin* v. *Railroad Co.* 81 N. C.
446; *Anderson* v. *Bennett*, 19 Pac. Rep. 769; *Railway Co.* v. *Triplett*,
54 Ark. 289; *Chicago & A. Ry. Co.* v. *May*, 15 A. & E. R. Cases, 323;
*Darrigan* v. *Railroad Co.* 24 Am. L. Reg. p. 458; S. C: 52 Conn. 285;
*Kieley* v. *Mining Co.* 2 Cent. Law Journal, 705; *Harrison* v. *Detroit R.
R. Co.* 19 Am. St. Rep. 180.

it was the master's duty to bestow it, and that if he appointed an agent to perform that duty he was responsible for his negligence. *Darrigan* v. *Railroad Co.* 52 Conn. 285; S. C. 24 Am. L. Reg. p. 459; *Cleveland, etc. R. Co.* v. *Keary*, 3 Ohio St. 201; *Chicago, etc. R. Co.* v. *Lundstrum*, 20 N. W. 198; *Schroeder* v. *Railway Co.* 18 S. W. Rep. 1094; *N. Pac. R. Co.* v. *Petersen*, 4 U. S. App. 574.*

In *Chicago, etc. Railroad* v. *Ross*, 112 U. S. 377, it was held that the conductor of a railroad train, while acting as such, and having "the right to command the movements of the train, and to control the persons employed upon it, represents the company  *  *  *  and does not bear the relation of fellow-servant to the engineer and other employees" on the same train. The rule established by that case, as it has been generally understood and applied by the Federal courts, is that the relation of fellow-servants "should not be deemed to exist between two employees, where the function of one is to exercise supervision and control over some work undertaken by the master, which requires supervision, and over subordinate servants engaged in that work, and where the other is not vested by the master with any such power of direction or management." *N. Pac. R. Co.* v. *Petersen*, 4 U. S. Appeals, 579. The court from whose opinion this quotation is made has declared in another case that the rule, as thus understood, " is right in principle and is supported by the weight of authority." *Woods* v. *Lindvall*, 4 U. S. App. 62. In approving the doctrine of the same case, a text writer of authority says : " What is the special attribute of the master? Is it the mere fact that he provides materials for the work, or that he selects the servants? Is it not, more than anything else, that in him is vested the right and duty of

*See also separate opinion of Judge Shiras in *Borgman* v. *Railway Co.* 41 Fed. Rep. 667.

giving orders, and directing what work shall be done, and how it shall be done? If the master chooses to delegate this authority to some one else, on what possible principle can he be allowed to relieve himself from the responsibility of having proper orders given." 1 Shearman & Redfield on Neg. sec. 228. By another text writer the rule of the Ross case is styled "the rule of humanity and justice." Beach, Contrib. Neg. sec. 331.

"The real test," says Mr. Wood, "by which to determine whether a general manager or foreman is the representative of the master, so as to make his acts the acts * * * of the master, is to ascertain whether in reference to the matter complained of *his will is at the time supreme.* That is, is he authorized, as to the particular work in hand, to direct and control the servants under him, as to the method of performing it, and are they bound to yield to his orders the same obedience as they are required to yield to the master himself." Wood's Master & Servant, p. 865.

In *Miller* v. *Mo. Pac. Ry. Co.* 19 S. W. Rep. 58, the Supreme Court of Missouri decided that "the conductor of a material train, having control of it and its movements, and a foreman over a gang of men engaged in repairing a railroad track, having power to direct them what to do and when to do it, are not fellow-servants of the men composing such gang." There the plaintiff's husband, who was one of the laborers under the foreman's control, was in the act of passing from one of the cars to another just as they began to move at a signal given to the engineer by the conductor, and the jar threw him between the wheels, where he received injuries resulting in his death. The evidence tended to show that the deceased was absorbed in his work, and that the train was moved without giving him any warning. Judge Black, in delivering the opinion of the court, said: "The defendant seeks to be relieved from liability in

this case on the ground that Miller lost his life by the negligence of a fellow-servant, thus invoking the rule that the defendant is not liable to one servant for the negligence of a fellow-servant.  The case made by the evidence stands on other and different grounds, as we view it.  When the master gives to a person power to superintend, control and direct the men engaged in the performance of work, such person is, as to the men under him, a vice-principal; and it can make no difference whether he is called a superintendent, conductor, boss or foreman.  *  *  *  The conductor being a vice-principal, it became his duty to give due and timely warning of his intention to move the train."  And in the same connection it is said to be "one of the absolute duties of the master to use ordinary care to avoid exposing the servant to extraordinary risks."  This Missouri case—somewhat like the case at bar as to part of the facts on which the decision turned—is not different in principle from many other cases that might be cited. *Schroeder* v. *Railway Co.* 18 S. W. Rep. 1094; *Anderson* v. *Bennett*, 19 Pac. Rep. 765; *Taylor* v. *Railroad Co.* 22 N. E. Rep. 876; *Hunn* v. *Railroad Co.* 78 Mich. 513; *Chicago & A. Ry. Co.* v. *May*, 15 A. & E. R. Cases, 320, 324; *Chicago etc. R. Co.* v. *Lundstrum*, 20 N. W. Rep. 198; *Dobbin* v. *Railroad Co.* 81 N. C. 446; *Chicago, St. P. etc. Ry. Co.* v. *Swanson*, 49 Am. Rep. 718; *Cowles* v. *Railroad Co.* 84 N. C. 309.

In *Balt. & O. R. Co.* v. *Baugh*, 149 U. S. 368, it is said that the ruling in Ross' case was made upon the ground that the conductor whose negligence caused the injury was "clothed with the control and management of a distinct department," although his management extended to only one train.  In the case just cited the Supreme Court held that the engineer of a locomotive which was running detached from any train could not be regarded as in control of a department of the rail-

road company's business so as to make him a vice-principal, although he was in charge of the engine, and the rules of the company declared that under such circumstances an engineer should be regarded as a conductor.* The court distinguishes the case from Ross' case on the ground that the running of an engine, by itself, could not constitute a separate branch of service, and on the farther ground that the plaintiff, the fireman of the locomotive, was not injured by reason of his obedience to any order of the engineer. Baugh's case being thus distinguishable from the Ross case, the former is not an authority against treating the defendant's foreman, Munden, as a vice-principal. For Munden had charge of such work as might well be called a separate branch of the defendant's business, within the rule of the Ross case as that rule was explained by Judge Brewer, and applied by the court, in *Borgman* v. *Railway Co.* 41 Fed. Rep. 667 ; and here there is also evidence tending to show that the injury to the plaintiff was received in obeying the foreman's order. It is held, however, in the Baugh case that the question as to a master's liability to his servant for the negligence of another servant does not turn merely on the matter of subordination and control, but depends rather on whether the act of alleged negligence is done in discharge of some positive duty of the master to his servant. *Balt. & O. Ry. Co.* v. *Baugh*, 13 Fed. Rep. 914.

We have seen that the Supreme Court of Missouri regards it as one of the master's positive duties to exercise ordinary care in avoiding the exposure of his servant to extraordinary risks. *Miller* v. *Railway Co.* 19 S. W. Rep. 58. And that duty, it is plain, can only be performed in many instances through a proper supervision of the work on which the servant is engaged. That Judge Cooley considers such supervision an absolute duty

---

*The Chief Justice and Judge Field dissented.

is shown by the following extract from the opinion of
the court, delivered by him, in *Quincy Mining Co.* v.
*Kitts*, 42 Mich. 34: "This duty of due care in the em-
ployment and retention of competent servants is one the
master cannot relieve himself of by any delegation ; and
if it becomes necessary to entrust its performance to
a general manager, foreman or superintendent, such
officer, whatever he may be called, must stand in the place
of his principal and the latter must assume the risk of
his negligence.    The same is true of the general super-
vision of his business : if there is negligence in this, the
master is responsible for it, whether the supervision be
by the master in person or by some manager, superin-
tendent or foreman to whom he delegates it.    In other
words, while the servant assumes the risk of the negli-
gence of fellow-servants, he does not assume the risk of
negligence in the master himself, or in any one to whom
the master may see fit to entrust his superintending
authority."    The rule thus stated is quoted and ap-
proved in *Hunn* v. *Railroad Co.* 78 Mich. 513, where it
was held that "a train dispatcher who has absolute
control over a division of a railroad, so far as the run-
ning and operating of trains is concerned, is not a fellow-
servant with other employees acting under his orders."
In thus ruling the court said : "It is the duty of the
master to supervise, direct and control the operations
and management of his business, so that no injury shall
ensue to his own employees through his own careless-
ness or negligence in carrying it on, or else to furnish
some person who will do so, and for whom he must stand
sponsor.    This is true of natural persons, and it is es-
pecially true of corporations who can only act through
natural persons."    On the same subject the Supreme
Court of Indiana, with reference to the liability of a rail-
road company for the negligence of a master mechanic,
uses the following language :  "It is also the master's

duty to do no negligent act that will augment the dangers of the service. In this instance Torrence was doing what the master usually and properly does when present in person, for he was commanding, and directing the execution of what he had commanded. By his own act he made it unsafe to do what he had commanded should be done. Acts of the master were therefore done by one having authority to perform them, and the breach of duty was that of one who stood in the master's place." *Taylor* v. *Railroad Co.* 22 N. E. Rep. 876. The negligence for which the master is made liable by these decisions is that which Mr. Thompson describes as the "direct negligence of the master, or his vice-principal," where he "personally interferes, and either does, or commands the doing of, the act which causes the injury." And for this, he says, "the master is answerable for damages to the same extent as though the relation of master and servant did not exist." Thomp. Neg. 971, 972. An application of the rule thus stated is shown by the decision of this court in *S. W. Telephone Co.* v. *Woughter*, 56 Ark. 206. In that case the manager of the defendant, while personally supervising the removal of a telephone pole which appeared to be sound though the inside was decayed, ordered a servant to climb the pole and detach the wires. The servant undertook to obey the order, and, in doing so, was thrown to the ground and injured by the breaking of the pole. It was held that, in the absence of contributory negligence on the servant's part, the defendant company was responsible for the damages he sustained, if it failed to use the means a prudent man would have employed to protect the servant from harm. "Among the duties of the servant," said the court, "is the obligation to obey all reasonable commands of the master. In obeying the commands of the master, if he has no information or knowledge to the contrary, he has a right to presume

that the master has done and will do his duty toward him, and can rely upon the judgment and discretion of the master in its performance." It was further said that, in that case, the company "was constructively present by and through its manager, and must be held accordingly." Now, it was not the rank or title of the manager which made the company present in his person, but the authority with which he was clothed, and the duty of supervision he undertook to perform; and if an officer or agent of inferior grade had been, for the time, invested with the same power, and had undertaken to perform the same duty, the company would, we think, have been equally liable for his negligence. *Railway Co.* v. *Triplett*, 54 Ark. 302; *Hough* v. *Railway Co.* 100 U. S. 213; *C. & A. R. Co.* v. *May*, 15 A. & E. R. Cases, 324. Whart. Neg. sec. 235.

The business of which Munden had charge extended, it seems, to many trestles and bridges, and was clearly such as required supervision. In conducting it he exercised the powers of a master, and was charged with the performance of a master's duty to the men under his control. And if the plaintiff was injured through his negligence in attempting to obey one of his orders, it does not answer the demands of justice to say that they were fellow-servants. *Taylor* v. *Railroad Co.* 22 N. E. Rep. 876; *Harrison* v. *Detroit* (Mich.), 19 Am. St. Rep. 180. According to this view, the charge of the court as to the relation existing between Munden and the parties to the suit was an error for which the judgment must be reversed.

In remanding the cause for a new trial, it is necessary to observe that the fifth instruction given at the defendant's request defines the care which it was the duty of the plaintiff to exercise for his own safety in language that may be construed to require a higher degree of diligence than the law exacts. On this point,

however, it is sufficient to refer to *Railway* v. *Rice*, 51 Ark. 476, and to the authorities there cited.

Reversed.

The Chief Justice did not participate in the decision of this cause.