## FORDYCE *v*. BRINEY.

## Opinion delivered November 25, 1893.

1. *Fellow servants—Car-inspector and car-repairer.*
   One whose duty it is to inspect cars, to call the attention of a car-repairer to defects, and to direct his labor, is a fellow servant of the car-repairer, where both are under the control and supervision of a foreman who had charge of the business of the company at that place.

2. *Duty of master—Regulations.*
   Where a car-repairer was injured while making repairs under a car attached to a train, the railroad company will be liable for any injury to him caused by its failure to exercise reasonable care in providing such regulations as would, to a person of ordinary prudence, seem sufficient to insure the safety of an employee so engaged.

3. *Duty of servant to obey rules.*
   In an action by a car-repairer to recover for injuries received in the service of a railroad company, it is not prejudicial *to the company* to charge that it was the duty of an employee to acquaint himself with and obey necessary rules, and, in case of injury from failure to obey them, ignorance of such rules is no excuse unless the employee's failure to know them was not due to want of care on his part.[1]

4. *Duty of servant to take precautions.*
   Where plaintiff testified that it was the duty of car-repairers, when they went under trains, to put out red flags, but that the company never before had a train on the repair track that he knew of, it was error to refuse to charge that though the car, under which plaintiff was working, was on the repair track, if the train of cars to which it was coupled was ready to be pulled out, plaintiff would be required to take the same care for his safety that he would if such train were standing on any other track.

Appeal from Craighead Circuit Court, Jonesboro District.

JAMES E. RIDDICK, Judge.

---

[1] See *Little Rock, etc. R. Co.* v. *Leverett*, 48 Ark. 348.

STATEMENT BY THE COURT.

This action against the receivers of the St. Louis, Arkansas & Texas Railway Company, was to recover for a personal injury received by the plaintiff while he was repairing a car. The receivers appeal from a judgment rendered in the plaintiff's favor on the verdict of a jury.

The court's fifth, sixth, seventh and eighth instructions were as follows:

5. While plaintiff must be held to have assumed all risks ordinarily incident to his employment of car-repairer, yet it was the duty of the defendants, or their employees, to use ordinary care in providing him a safe place in which to perform such work. If it was the duty of the plaintiff to go under cars for the purpose of repairing them while on the repair track, it was also the duty of the defendants to use ordinary precaution to prevent his injury by adopting such rules and regulations as would to a person of ordinary prudence seem sufficient to insure his safety while he was engaged at such work ; and if they failed to exercise ordinary care in this respect, but allowed their employees to move engines and cars upon said repair track without any regulation which could reasonably be supposed sufficient to protect those engaged in repairing cars on said track, and injury resulted to them from such negligence on the part of the defendant, then they will be liable, although the negligence of a fellow servant may have also contributed to such injury, unless plaintiff was also guilty of negligence contributing to the injury.

6. If the car-inspector, having the control of the plaintiff and the authority to direct him in his work, ordered him to go under a caboose attached to a train of cars on the repair track, and, while obeying such orders and exercising ordinary care on his part, the plaintiff was injured by the negligence of the car-inspector in

failing to give any notice to the engineer or person in charge of the train, or if he was injured through the failure of the defendant to exercise ordinary care in providing any regulation sufficient for the protection of those working on the repair track, then the defendants are liable, and the jury should find for the plaintiff, unless he, himself, was guilty of negligence contributing to such injury.

7. While it is the duty of the railway company to make and promulgate necessary rules and regulations for the safety of its employees, it is also the duty of the employee to acquaint himself with such rules and regulations and to obey them, and, in case of any injury resulting to such employee from his failure to obey such rules and regulations, he will not be permitted to excuse himself by saying that he did not know the rules, unless it appears that he had no sufficient means of acquiring such information, and that his failure to know them was not from any want of care on his part ; and in this case if you find that a regulation or rule of the defendants required employees working under cars to hang out a danger signal so that it might be observed by the train men, and that plaintiff failed to obey this regulation, then he cannot recover, and the finding must be for the defendants unless it is shown that the plaintiff had no notice of such rule, and that his ignorance in this regard was not occasioned by any want of care or attention on his part.*

8. If the caboose, under which the plaintiff was working at the time of the injury, was attached to a train of cars at the time he began his work, then whether the plaintiff was guilty of negligence in going under said caboose to work is a question for the jury,

---

*In *Railway Co.* v. *Leverett*, 48 Ark. 333, 348, it was held that "an employee of a railroad company is not bound by a rule of the company which is not brought to his attention."

depending upon the circumstances in proof. If the position taken by the plaintiff was dangerous, and such that a man of ordinary prudence would not have taken, and if the connection of the train and caboose or other circumstances were sufficient to warn a person of ordinary prudence of his danger, then plaintiff would be guilty of contributory negligence in going under said caboose, and he cannot recover.

The sixth instruction requested by the defendant and given by the court was as follows :

6.    If the jury find from the evidence that the railway company or the defendants have established and promulgated a rule for the protection of car-repairers, requiring them, before going under a car to make repairs, to hang out a danger signal, and that the plaintiff went under the car where he received the injury without obeying such rules or regulations, then you are instructed that the plaintiff was guilty of negligence, and if you further find that, had the plaintiff obeyed such rules or regulations, the injury might not or ought not to have happened, you will find for the defendants.

The following was the defendants' tenth instruction, as requested.

10.    You are instructed that, although you may find from the evidence that plaintiff went under the car by the direction of C. A. Higgi, yet if you find that plaintiff failed to hang out a danger signal, and then, while he was under the caboose, the engineer or fireman coupled on to the train to which the caboose was attached, and commenced to move it, and the plaintiff was thereby injured, he cannot recover, as the failure to hang out the danger signal was an act of negligence on his part.

As modified by the court and given to the jury the defendants' tenth instruction was as follows :

10.   You are instructed that, although you may find from the evidence that plaintiff went under the car by the direction of C. A. Higgi, yet, if you find that the regulations of said defendants required employees to hang out a danger signal while at such work, and that the plaintiff failed to hang out such signal, and that, while he was under the caboose, the engineer or fireman coupled on the train to which the caboose was attached, and commenced to move it, and the plaintiff was thereby injured, he cannot recover, as the failure to hang out the danger signal was an act of negligence on his part.

The other facts are sufficiently stated in the opinion.

*J. C. Hawthorne* and *Sam H. West* for appellants.

1.   The court erred in giving the fourth instruction.   The car-inspector was not a vice-principal unless he had power to employ and discharge other servants. He was merely a sub-manager or foreman of higher grade, and was fellow servant with appellee.   129 Mass. 268; 19 Am. St. Rep. 180; 55 N. Y. 579; 17 N. Y. 153; 108 Ill. 288; 64 N. Y. 5; Wharton, Neg. 229; 76 Me. 143.

2.   The fifth is abstract and misleading.   Beach, Cont. Neg. sec. 141.

3.   The injury was brought about by plaintiff's own negligence.   41 Ark. 532; 51 *id.* 467; 44 *id.* 293.

4th.   The sixth is objectionable because it assumes that the car-inspector was not a fellow servant, and that his failure to give notice to the engineer was negligence. 19 Am. St. 180; 62 N. Y. 99.

5.   The first, second and third asked for defendant should have been given.   A servant assumes all risk ordinarily incident to his employment, including the negligence of fellow servants.   A car-inspector is a fellow servant.   4 Met. 49; 125 Mass. 79; 20 Rep. 301; 135 Mass. 209.

6. It is the duty of a railroad company to make and promulgate rules, etc., for the safety of employees, but it is also the duty of an employee to acquaint himself with and obey them. The question as to whether plaintiff's failure to place a danger signal out was the proximate cause of the injury should have been submitted to the jury. 33 Oh. St. 227 ; 63 Tex. 549 ; 70 *id.* 226 ; 60 N. Y. 326 ; 58 N. Y. 411.

7. It was error to refuse the thirteenth. 58 Mich. 584.

*L. L. Mack* for appellee.

1. Higgi was the boss car-repairer, a vice-principal acting for the company ; had charge of the movements of the cars being repaired, and control of the hands engaged therein. Plaintiff was under his orders at the time. The power to employ and discharge hands is not necessary to constitute a vice-principal. The true test is—was Higgi employed to discharge any of the duties of the master. Whit. Smith, Neg. pp. 148, 149 ; 7 Am. & E. Enc. Law, p. 844, and note ; 44 Ark. 524.

2. The proof shows gross negligence committed in the presence of the company's boss car-repairer. The employer is bound to take reasonable care to furnish the employee with adequate material and resources for the work ; to see that a sufficient number are employed, where it is dangerous to leave the work to a few only ; to make rules for safe working ; to inform him of extraordinary risks, etc. They are part of the contract of hiring. Whit. Smith, Neg. p. 126 ; *ib.* 132–3 ; 44 Ark. 524 ; 51 *id.* 467.

3. The plaintiff may recover, notwithstanding his contributory negligence, if the defendant had knowledge in time to prevent the injury by the use of proper care. Whit. Smith, Neg. pp. 374–5 ; 4 A. & E. Enc. Law, p. 40 ; 48 Ark. 106.

MANSFIELD, J., (after stating the facts.) At the time of the injury for which the plaintiff recovered, he and Charles Hickey were in the service of the railway company at its round-house in Jonesboro, the former as car-repairer and the latter as car-inspector. C. Bushmeyer was foreman of the round-house, and appears to have had charge of the business of the company at that place. He alone had power to employ and discharge the men who worked for the company there, and Hickey and the plaintiff both worked under his supervision and control.

The position of Hickey, so far as the record discloses it, may be stated in a few words: It was his duty to inspect the cars, and to call the attention of the car-repairers to such defects as he found to exist. It then became their duty to make the necessary repairs, under his direction and instruction.

The company had at Jonesboro a track which was used as a repair track, and sometimes for making up trains. On the morning the plaintiff was injured, a caboose and about twenty-five flat cars were standing coupled together on this track ; and the plaintiff, who had been informed that the train thus made up was going out that morning, went under the caboose, by the request of Hickey, to repair it. While he was under the caboose, which was behind the cars, an engine was coupled to the cars, and the train was started without ringing the bell or sounding the whistle. At a signal from Hickey, the train was stopped, but not until its movement had resulted in the injury complained of.

On the trial it was shown that a rule of the company, appearing on its time cards, required employees to put out signals when they were repairing cars coupled together ; and that the signal in day time was a red flag, which it was the duty of the workman making the repairs to put out. In testifying for himself, the plain-

tiff admitted that he knew that red flags were used as danger signals in going under cars off the repair track, but stated that they were never used on that track ; and it appears that he used none on the occasion referred to.

Two of the principal questions which the charge of the court submitted to the jury, as affecting the liability of the defendant, were: (1) whether Hickey was a vice-principal ; and (2) whether the company performed its duty in adopting rules to promote the safety of its employees while engaged in repairing cars.

On the first of these questions, the fourth instruc- 1. Doctrine of fellow-ser- tion of the court was to the effect that "if it was the vants. duty of the plaintiff, as car-repairer, to work under the authority and control of the car-inspector," and he was so working at the time he was injured, then the car-inspector was not his fellow servant. This was error. There was no evidence that Hickey, the car-inspector, sustained to the car-repairers any relation other than that of a mere foreman directing their labors ; and the possession of such authority as that implied did not make him the representative of the defendant. *Fones* v. *Phillips*, 39 Ark. 39; *Bloyd* v. *Railway Co. ante*, p. 66. The first clause of the sixth instruction is equally objectionable, on the same ground. And in this connection it is proper to say that there was no evidence tending to show that Hickey was charged with the duty of performing any act looking to the safety of the place where the plaintiff was directed to work.

The court's fifth instruction, and the second clause 2. Duty of master to of the sixth instruction, apply to the second question adopt regula- tions. stated above, and both of those instructions are assigned as error. Upon a similar question the following language was used by this court in *Railway Co.* v. *Triplett*, 54 Ark. 289, and with reference to a rule adopted by the defendant in that case: "It is claimed by the company that if this rule was sufficient, when faithfully observed

by its employeès, to guard against the danger, the company has discharged its duty. This seems to be the general rule of the law, when the circumstances are such that a reasonably prudent person might rely upon rules and regulations to afford protection. But if the master sees proper to rely upon such methods of protection to his servants, and the occasion demands it, he should also adopt such measures as may be reasonably necessary to secure the observance of such rules." And the court added that "the degree of care" the master should exercise "must always be measured by the exigencies of the particular case." It was accordingly held in that case that "where a car-repairer was engaged in work under a car so situated that a jar from an approaching car would cause it to fall and crush him, it is the duty of the company, when apprised that its regulations are insufficient to protect him, to adopt such measures as will afford him reasonable protection against the dangers incident to the performance of his duties." These quotations sufficiently indicate a just and practical rule for measuring the diligence required of this defendant in discharging its duty to the car-repairers as to a safe place in which to work. If the signal, which, by the company's rule, it was made their duty to give by displaying a red flag, was a safe-guard upon which "a person of ordinary prudence" might rely as affording "reasonable protection" against the dangers to which the workmen were exposed in pursuing their labors on the repair tracks, then the company would not be guilty of negligence by failing to resort to other means of protection before the rule proved to be ineffectual, or there was reason to believe that it was so. But if the company knew, or ought reasonably to have known from the circumstances, that the rule was inefficient, because it was in itself insufficient, or because it was disregarded by the persons operating the trains, then a failure to adopt such other or

additional rule or regulation as "a reasonably prudent person" would rely upon for protection would be negligence. *Railway Co.* v. *Triplett*, 54 Ark. 299–301.

We think the court did not intend to apply to the question of the defendant's negligence any doctrine not approved by the decision in Triplett's case; and we think the evidence was such as to warrant an appropriate charge in harmony with the rule there applied. But the charge on this point is not as explicit as a phraseology somewhat different from that employed would have made it; and it contains some expressions that may possibly have led the jury into regarding it as the duty of the company to adopt some measure with special reference to the safety of the plaintiff on the particular occasion of his injury, whether there was reason for distrusting the efficiency of the general rule or not. Nor is it entirely clear to us that other expressions used may not have been taken to require such provision against danger as would insure the absolute safety of the plaintiff.* But it is not probable that this part of the charge was actually misleading, and we cannot say that a fair and reasonable construction would make it so.

The next assignment complains of the court's seventh instruction. But that instruction was plainly without prejudice to the appellant, as will appear by comparing it with an instruction on the same subject held to have been correctly given in *Railway Co.* v. *Leverett*, 48 Ark. 348.

3. Duty of servant to obey rules.

The eighth and last of the court's instructions was also objected to. But the only defect mentioned by counsel was cured by the sixth instruction given at the defendant's request, and by its tenth instruction, which was also given with a modification properly made by the court.

---

* See *St. Louis, etc. Ry. Co.* v. *Gaines*, 46 Ark. 567; *S. W. Telephone Co.* v. *Woughter*, 56 Ark. 210.

4. Duty of
servant to take
precautions. The defendant requested the following instruction, which the court refused to give: "The jury are in- structed that, notwithstanding the caboose, under which the plaintiff was working at the time he received the injury complained of, was on the track known as the 'repair track,' if a train of cars to which the engine was coupled was backed upon the repair track, ready to be coupled with an engine and pulled out, then the plaintiff would be required to take the same care and precaution for his safety and protection that he would be required to do, had the caboose and train of cars been standing coupled together on any other track in the yard."

On the facts of the case, this instruction was proper, and it was error to refuse it. The plaintiff testified that "it was usual, and the duty of car-repairers, when they went under trains, to put out red flags;" but that "the company never before had a train on the repair track that he knew of." His own testimony tends strongly to show, if it does not admit, that the compa- ny's rule was within his knowledge; and his statement can hardly be said to be a denial that the rule applied as well to a train off the repair track as to one on it. The track was not, in a proper sense, a repair track, while it was being used in making up a train; and as the defend- ant knew that the caboose under which he was injured was attached to a train made up on that track, and soon to be taken out, he must have known that the same necessity for observing the rule existed as if the train had been upon any other track.

For the errors of the court in refusing the instruc- tion just noticed and in giving the fourth instruction and the first clause of the sixth instruction, the judg- ment is reversed, and the cause remanded for a new trial.