ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* INMAN.

Opinion delivered February 4, 1907.

1. NEGLIGENCE—EVIDENCE.—In an action against a railroad company for the negligent death of an employee, where it was a question whether

the employee was guilty of contributory negligence, it was error to permit plaintiff to prove that deceased was a cautious, careful and prudent man who avoided taking danger. (Page 597.)

2. MASTER AND SERVANT—DUTY OF MASTER.—As a general rule, it is the duty of the master to provide the servant with suitable instruments and means with which to do his work, and to provide a suitable place in which such person, when exercising due care himself, can perform his duty safely or without exposure to dangers that do not come within the obvious scope of his employment. (Page 598.)

3. SAME—DUTY TO CAUTION SERVANT.—Where a servant, by reason of youth or inexperience, does not appreciate the danger incident to the work which he is employed to do, it is the master's duty to give him such instructions as would, in the judgment of men of ordinary prudence, be sufficient to enable him to appreciate the danger and to do the work safely. (Page 598.)

4. SAME—DUTY TO FURNISH SAFE PLACE.—Where a servant is working in a place of danger, it is the master's duty to adopt such reasonable precautions to provide for his safety as a reasonably prudent man would have considered sufficient for his own safety under the same circumstances. (Page 598.)

Appeal from White Circuit Court; *Hance N. Hutton*, Judge; reversed.

*B. S. Johnson* and *S. D. Campbell*, for appellant.

1. Under the circumstances of this case, and because of the nature of the work in which deceased was engaged, there was no duty resting on appellant to provide him with a safe place to work, but deceased assumed all the risks and hazards of the employment. Appellee is aided by no presumption of negligence on the part of appellant. 79 Ark. 76; 179 U. S. 658; 76 Ark. 69; 58 Ark. 217; 73 Ark. 55; 65 Fed. 48; 67 Fed. 507; 144 Fed. 605. See, also, on the question of assumed risk, 46 Ark. 569; 54 Ark. 389; 61 Ark. 549; 63 Ark. 427; 64 Ark. 367.

Even though there may be evidence of witnesses which alone would sustain the verdict, yet, if the physical facts disclosed in the record show that such evidence is unreasonable and contrary to human experience and common observation, the court will reverse. 79 Ark. 608.

Uncontradicted facts show that neither Inman nor Marrs had any control or superintendence the one over the other, nor was either invested with such authority by appellant, and that, although belonging to different gangs, all, in this emergency,

were working together for a common purpose, all in the same grade under the common direction and supervision of Busby. Such being the case, the fellow-servants' law applies, and precludes recovery. Kirby's Digest, § § 6658, 6659; 63 Ark. 477 and authorities *supra.*

2.   The court erred in admitting incompetent testimony as to statements made and language used by persons at the wrecked bridge, the same not being a part of the *res gestae,* being mere hearsay, and throwing no light on any element of liability as to the proximate cause of the injury.  76 Ark. 430.

3.   Testimony of witnesses to the effect that deceased was a cautious, prudent or careful man was improperly admitted.  76 Ark. 302; 58 Ark. 454; 115 Fed. 268; 83 Am. Dec. 592; 25 Am. Rep. 172; 52 *Id.* 744; 48 S. W. 568; *Id.* 608; 6 Thompson on Neg. (2 Ed.), § 7883.

- 4.   It was error to admit testimony as to lack of warning at the time of the accident.  58 Ark. 227 and authorities *supra.*

5.   The court erred in reading to the jury the sections of the digest upon the law of fellow servants and vice principals without explanation.  63 Ark. 477.

6.   At the conclusion of the argument of appellee's attorney, the audience applauded, whereupon the court, on objection of appellant, reprimanded the audience, but gave no cautionary admonition to the jury.  The jury were thereby prejudiced, and the proceedings at the time were prejudicial even if the court had admonished the jury.  65 Ark. 627.

*S. Brundidge, Jr.,* and *J. W. & M. House,* for appellee.

1.   While it is true the burden of proving negligence is on appellee, yet when positive acts of negligence, or even acts from which negligence may be inferred, are shown, that burden is discharged.  57 Ark. 383.

While an employee assumes all the risks incident to the service he enters, he does not assume a risk created by the negligent act of the master.  67 Ark. 217.  He neither waives nor assumes the negligent act of the master or vice principal.  16 Am. & Eng. Ry. Cas. (U. S.) 324; 12 *Id.* 492; *Id.* 636; *Id.* 517.

Marrs was at the time a vice principal, acting for the appellant, and knew that when the rivets were cut the wreckage

would fall. It was his duty to see that no one was near it at the time, if by timely warning it could have been done. 45 Ark. 318; 46 Ark. 388. And the fact that the work was of a dangerous character shoud have caused a higher degree of care on the part of those in charge of the work. 14 Am. & Eng. Ry. Cas. (N. S.) 657.

The physical facts in no wise contradict the evidence in the record, and the cases cited by appellant on this point have no bearing upon any question arising in this case.

2. It is in proof that Inman belonged to the bridge building crew, with Woodall as his foreman, and that Marrs was foreman of the wrecking crew, who had no connection whatever with the work in which Inman was engaged. Marrs's crew were engaged simply in clearing away the wreckage, and he had authority to direct the work and give orders to his men. It is further proved that Busby at the time was three hundred yards away and not giving orders. Deceased and Marrs were not fellow servants. Kirby's Digest, § § 6658, 6659; 65 Ark. 138; 70 Ark. 411.

3. Declarations made by the servant are admissible against the master, when they are made in the transaction of his business, and coincident with the events to which they relate. 28 Am. & Eng. Ry. Cas. (O. S.) 524; *Id.* 467; 16 *Id.* 580; 34 *Id.* 127; 10 *Id.* (N. S.) 368.

4. Evidence to the effect that deceased was a careful and cautious man was competent; but, if not, appellant can not complain, because it invited such testimony by introducing in evidence the application made by Inman for employment. Moreover, if incompetent, it was harmless, because it only proved that which the law presumes to be true until the contrary is shown. 20 Am. & Eng. Ry. Cas. (O. S.) 422; 35 Pac. 269; 45 Pac. 581; 100 Am. Dec. 69; 63 N. Y. 643; 52 Am. Rep. 468; 18 Am. Rep. 407; 163 U. S. 353; 72 Ia. 371. But the issue was raised as to contributory negligence of deceased, hence his habits as to care and caution were admissible. 44 Atl. 388; 114 Ia. 257; 99 Ill. App. 143; 1 *Id.* 439; 20 Col. 107; 61 N. H. 416. Such evidence is especially admissible where the party dies, and can not be before the court to testify. *Ubi supra.*

5. If it was error to read the statute relating to fellow ser-

vants, etc., without explanation to the jury, it is cured by other instructions given at the instance of appellant.

BATTLE, J.   Matilda Inman, as administratrix of L. H. Inman, deceased, brought this action against the St. Louis, Iron Mountain & Southern Railway Company to recover damages occasioned by the death of her intestate.   She alleged in her complaint that L. H. Inman was, on the 12th day of September, 1904, a bridge carpenter, and was in the employment of the defendant, and that one J. A. Woodall was the foreman of a gang of men with which he was working at that time, and on that day, while working under such foreman on a bridge of the defendant across the Ouachita River, near Arkadelphia, another gang, of which Frank Marrs was foreman, wilfully and negligently cut the bolts and supports of an iron beam in the bridge, and thereby caused the same to fall upon and kill Inman; that deceased left plaintiff, Matilda Inman, his widow, and two children, Fred Inman, aged twenty years, and Anna Inman, aged thirteen years, him surviving.

The defendant answered and denied the allegations in the complaint, and alleged that the death of Inman was caused by his own contributory negligence, and was the result of and incident to his employment, and within the risks and hazards assumed by him.

The following facts were shown by the evidence adduced in the trial before a jury in this action:   On the 11th of September 1904, a freight train of the defendant broke through and wrecked a span of the bridge across the Ouachita River, near Arkadelphia. Immediately all available gangs of workmen in the employment of the defendant, and they were many, were called to remove the wreckage and repair the broken span, each gang having a foreman.   But the superintendence of this work was under S. H. Busby, and all worked as one gang under him.   On the 12th day of September, 1904, "while Inman, who was a bridge carpenter and a member of one of the gangs, was engaged in this work, and while he was taking measurements for the purpose of repairing the bridge, other men were cutting rivets and taking away parts of the wreckage of the span as fast as possible.   This span, before the wreck, was supported by two large rock piers some distance apart, and when the freight train broke through

the span there were portions of the broken span left, so that, while parts of the freight train and of the wrecked span rested against one corner of the pier, there was, as to that part of the pier opposite, a distance in the clear, between the wreckage and the north side of the south rock pier, of from two to five feet—at least such clear space sufficient for a man to ascend or descend a rope between the wreckage and the pier. This pier was about twenty feet high, about eighteen feet wide at the top, about five or six feet thick at the top, and all dimensions increasing towards the base (or "flaring" as termed by the witnesses.) There was a rope fastened to one of the ties at top of the pier and hanging down to the base, so that it could be turned in any manner as to the pier—on the north side between the pier and the wreckage or alongside the shortest diameter of the pier on either side, or on the north side of the pier (its longest diameter), being the opposite side from the wreckage. This rope for a part of the time was suspended on one side, and a part of the time on the other. When Inman descended it the last time, it was hanging between the wreckage and the north side of the south pier. It had been used indiscriminately by persons ascending and descending. Who changed it from one side of the pier to the other, or why the change was made, the evidence does not show. But it does show that it was used by different people, and that some, in descending, came down until the wreckage was reached, and then got on that to work or to go down to the bottom; while others would continue on the rope to the end. The wreckage stood with the distance from two to five feet between it and the pier, as before stated, from some time early in the night of the 11th of September, 1904, until about two o'clock in the afternoon of the next day, when the wreckage gave way while Inman was descending the rope between it and the pier, about half way down, and fell against him. The cause of the fall was the cutting of the rivets or bolts which held the wreckage together by the men engaged in that work. A severe injury was inflicted upon Inman by the fall, from which he died in a few hours.

In the trial plaintiff was allowed to adduce evidence, over the objection of the defendant, tending to prove that the deceased,

Inman, was "a cautious, careful and prudent man, who avoided taking danger."

The jury returned a verdict in favor of the plaintiff for $5000, and the defendant appealed.

The evidence admitted by the court over the objection of the defendant was incompetent. It did not tend to show that the deceased pursued any particular course of conduct at the time he was killed, or that he did or did not any act shown by the evidence. It does not tend to show such invariable regularity of action or conduct by him in the past as to make it probable that he did or failed to do any act at the time he was killed. Unless it had that effect, how could it enable the jury to determine whether he was or was not guilty of contributory negligence at the time he was killed? The statement that he was careful and cautious was merely an expression of an opinion of a witness, and threw no light upon any issue in the case. From the admission of it as evidence the jury might have inferred it was for the purpose and sufficient to show that deceased was not guilty of negligence. It was misleading and prejudicial, and the court erred in admitting it. *Hot Springs Street Railway Company* v. *Bodeman,* 76 Ark. 302; *Railway Company* v. *Harrell,* 58 Ark. 454; *Chase* v. *Maine Central Railroad Company,* 52 Am. Rep. 744; 6 Thompson on Negligence (2 Ed.), § 7883; 1 Wigmore on Evidence, § 92; *Louisville & N. R. Co.* v. *McClish,* 115 Fed. Rep. 268, 277.

Inasmuch as the judgment in this case will be reversed and the cause remanded for a new trial, we deem it necessary to consider what was the duty of the appellant to provide for the protection of Inman and other persons in its employment and engaged in moving the wreck of the bridge, at the time of the accident which caused the death of Inman, and to make suggestions as to the law regulating the rights of the parties to this action in a case wherein the pleadings are properly drawn, to the end the parties may take advantage of them if they see fit.

There was a large force of men engaged in removing the wreck and repairing the bridge at the time the accident occurred. They were exposed to great danger and injury, as shown by the evidence in this case. What was the duty of appellant to them as to such danger?

As a general rule, it is the duty of the master to provide the servant with suitable instruments and means with which to do his work, and to provide a suitable place in which such person, when exercising due care himself, can perform his duty safely or without exposure to dangers that do not come within the obvious scope of his employment. It would be a breach of his duty to expose a servant, who, by reason of his youth or inexperience, is not aware of or does not appreciate the danger incident to the work he is employed to do or the place he is engaged to occupy, without first giving him such instructions and caution as would, in the judgment of men of ordinary minds, understanding and prudence, be sufficient to enable him to appreciate the dangers and the necessity for the exercise of due care and caution, and to do the work safely, with proper care on his part. *Emma Cotton Seed Oil Co.* v. *Hale,* 56 Ark. 232.

In *Railway Company* v. *Triplett,* 54 Ark. 289, where a car repairer was engaged in work under a car upon a railroad track, and so situated that he could not protect himself and that a jar from an approaching car would cause it to fall and crush him, it was held that it was the duty of the railway company, "by the exercise of ordinary care, to provide the car repairer with a safe place in which to work, and that it might do so by adopting such rules and regulations as would be sufficient for that purpose, when faithfully observed by its employees, and when the circumstances were such that a reasonably prudent person might have relied upon rules and regulations to afford protection; and that, if he saw proper to rely upon such methods of protection, and the occasion demanded it, he should also have adopted such measures as would have reasonably been necessary to secure the observance of such rules." *Fordyce* v. *Briney,* 58 Ark. 206; *Kenefick-Hammond Company* v. *Rohr,* 77 Ark. 290.

In *Kenefick-Hammond Co.* v. *Rohr,* 77 Ark., 290, the defendant was engaged in constructing a railway. Plaintiff was in its employment. At the particular time and place when and where the plaintiff was injured construction work was being done on the line of the road, which ran along the side of a mountain, about 250 yards from the valley below. Laborers in the employment of the defendant were engaged in making a cut. Two sets of men were drilling holes in the earth and rock for the re-

ception of powder for blasting. A portable boiler was used to furnish steam to operate the drills; and plaintiff and an assistant operated the same. On account of the character of the ground, trees and underbrush intervening, plaintiff at the boiler and the men at the drills could not see each other. When a hole was finished, it was charged with powder, and the same was discharged. This court held that it was the duty of the defendant to provide reasonable means and precautions for the protection of plaintiff against the blasts.

It follows, then, that it was the duty of appellant to have adopted and used reasonable means and precautions to provide for the safety of Inman at the time of the accident, which were such as a reasonable and prudent man would have considered sufficient for his own safety under the same circumstances. 1 Labatt on Master and Servant, § § 14-17.

For the error indicated the judgment of the circuit court is reversed, and the cause is remanded for a new trial.