WESTERN COAL &. MINING COMPANY *v.* BUCHANAN.

Opinion delivered April 29, 1907.

1. MINES—DUTY OF MASTER TO INSPECT.—The duty of inspecting a mine for gas is imposed upon the master, and its delegation to a servant does not make such servant *pro tanto* a fellow servant with his co-workers, but a vice principal. (Page 502.)

2. SAME—CONTRIBUTORY NEGLIGENCE.—Where a miner, after being informed that there is gas in a working place, and that it is dangerous to go there with an open lamp, goes there with an open lamp and is injured in the resulting explosion, he is not entitled to re-cover. (Page 502.)

3. INSTRUCTION—SPECIFIC AND GENERAL.—It is error to refuse to give a specific instruction clearly applying the law to the facts of the case, even though the law in a general way is covered by the charge given, unless it appears that prejudice has not resulted. (Page 503.)

4. SAME—SHOULD BE BASED ON EVIDENCE.—An instruction upon the meas-ure of damages should contain no element of damage not covered by evidence. (Page 503.)

Appeal from Franklin Circuit Court; *Jeptha H. Evans,* Judge; reversed.

STATEMENT BY THE COURT.

Appellee Buchanan and one Korkille were employed in appellant's coal mine to remove track from a certain portion of the mine which was no longer in use. This was in the "Fifth North" entry, and the places where the track was to be taken up at the time in question were the "straight heading" and the "back heading," terms describing passageways of said entry. These headings were abandoned as work places, and were marked as containing gas by cross marks which were warnings against entering them. They had been inspected by the fire boss the morning of the injury to appellee. Immediately before going to work, Buchanan and Korkille, the fire boss and the pit

boss, met at the bottom of the shaft. The place where the track was to be removed was some quarter or half distant from the bottom of the shaft. The evidence conflicted as to the information given by the fire boss as to the presence of gas; Buchanan's version being that the fire boss told them that the straight heading was clear of gas, but that there was a little gas in the back heading, but not enough to hurt. The fire boss says that he told them that there was not much gas in the main heading, but "for God's sake don't go in the back heading with an open light." The pit boss said if there was any gas they should have safety lamps. The fire boss proceeded to get the safety lamps for them, but found there was only one in condition for use. This was given to Korkille. There was evidence tending to show that Buchanan was not familiar with the use of a safety lamp, and that he so informed the pit boss; and there was evidence tending to show that Korkille was familiar with the use of it.

The evidence for the appellant tends to prove that the safety lamp was given to Korkille for the two of them to work by, and not for the purpose of inspection, as that had just been done by the fire boss, and that they were warned not to go to their working place with open lamps, as there was too much gas in it to permit the use of open lamps, and despite such instruction did go into their working place with the knowledge that there was gas there, and with an open lamp upon Buchanan's cap, which caused the ignition of the gas and consequent explosion. The explosion resulted in the death of Korkille and serious injury of Buchanan.

The evidence on the part of appellee tends to prove that the safety lamp was given to Korkille for the purpose of inspecting the headings for gas before working therein, and not for the purpose of using it to work by. There is a conflict as to whether the light from a safety lamp would be sufficient to work by. It seems to be certain that an open light would give more light. The testimony of appellee is that the safety lamp was only used for inspection purposes and its light insufficient to work by, while the testimony on the part of appellant is that it gave sufficient light to work by, and should be used instead of an open lamp where gas was present in any quantity.

The court gave seven instructions, and refused to give fifteen instructions requested by appellant. The seventh instruction given by the court is as follows:

"7. The duty of using ordinary care to provide a reasonably safe place for an employee to work, including a reasonable inspection, is a master's duty, and the master does not discharge it by assigning its performance to one who in other respects is a fellow-servant of the plaintiff. In performing a master's duty any one to whom the master assigns it represents and stands in the place of the master. If such person is negligent in the performance of such duty, such negligence is the negligence of the master, and the plaintiff does not assume the risk of negligence, if there is such negligence, in the performance of the master's duty. He may rely on the master to perform his duty or any one whom the master assigns its performance, unless he knows the master has not performed his duty in person or by another, or unless as an ordinary prudent and cautious person he ought to know of such failure."

The tenth and fourteenth refused instructions are as follows:

"10. If the jury believe from a fair preponderance of the evidence that plaintiff and his fellow laborer, Korkille, were informed that there was gas in the back heading, that prior to and at the time of the accident plaintiff knew that the part of the entry where he was injured had been marked out, and was unsafe on account of the existence of gas, and for this reason he and Korkille were given a safety lamp with which to work, that when furnished with a safety lamp plaintiff said to Korkille, in substance, if there was enough gas for a safety lamp, they should get the fire boss to go in there, and that Korkille replied, in substance, that he could adjust or test the gas as well as the fire boss; that thereupon Korkille entered the place with the safety lamp, and after doing so, then believing it safe, entered again but with an open lamp, and while working in the place with an open lamp the gas was by such lamp exploded, and plaintiff injured, he cannot recover.

"14. If the jury believe from a fair preponderance of the evidence that plaintiff knew, or was informed before he and Korkille began the work of tearing up the track, that there was gas in this working place, and, so knowing, he went with Korkille

to work in this place where he knew, or had good reason to believe, gas was accumulated in explosive quantities, with an open lamp, and while so working the gas exploded, then plaintiff assumed the risk and danger, and cannot recover."

The jury returned a verdict for plaintiff, and the Coal Company appealed. Other facts are stated in the opinion.

*Ira D. Oglesby,* for appellant.

*Sam R. Chew,* for appellee.

HILL, C. J., (after stating the facts.) 1. It is contended that there were not facts sufficient to justify the court in sending the case to the jury, but this contention is not sound. There were sufficient facts to go to the jury upon the theory that the pit boss delegated to Korkille the duty of inspecting the working place for gas, and that Korkille negligently performed the inspection. The fact that Korkille was a fellow-servant of Buchanan in the performance of his labors as a track man would not prevent him from also being vice principal if master's duty was placed upon him. The duty of inspecting a mine for gas is always a principal's duty, and its delegation to a servant does not make that servant a fellow-servant of his co-workers; but he becomes, while in the performance of such duties of inspection, a vice principal. There was a conflict in the evidence as to whether such theory was the truth of this case. And the court in the seventh instruction properly sent that issue to the jury.

2. The court should have given the 10th and 14th insructions requested by appellant. There were no instructions given that covered the hypothetical case stated in each of these instructions, and there was evidence tending to prove the truth of the hypotheses assumed in them. If these hypotheses were true, it was the duty of the jury to find in favor of appellant, but that opportunity was not given to the jury. It is true that other instructions were given which correctly stated the general rules of law governing the cause of action; but none of them went to the specific facts outlined in these two instructions, which were sustained by the evidence on the part of appellant, and which, if believed by the jury, would have entitled appellant to a verdict.

The tenth refused instruction is justly criticised as containing conversations between witnesses when it should have merely stated the facts relied upon in concrete form. It is not open to the objection of being argumentative, nor of singling out any particular fact and of laying undue stress upon it. While in awkward form, it does present to the jury the facts adduced by appellant which, if believed, would have entitled it to a verdict; and these facts were not presented anywhere else in the charge.

The 14th refused instruction is not open to the criticism of the 10th, and certainly should have been given. It is settled law in this jurisdiction that it is error to refuse to give a specific instruction clearly applying the law to the facts of the case, even though the law in a general way is governed by the charge given, unless it appears that prejudice has not resulted. *St. Louis & S. F. Ry. Co.* v. *Crabtree,* 69 Ark. 134; *St. Louis, I. M. & S. Ry. Co.* v. *Robert Hitt,* 76 Ark. 227; *Hamilton-Brown Shoe Co.* v. *Choctaw Mercantile Co.,* 80 Ark. 438.

And this is the general rule elsewhere. See Hughes on Instructions to Juries, § 7.

It cannot be said in this case that no prejudice has resulted, because appellant's whole case in concrete form has not gone to the jury, and it is impossible to tell what weight the jury would have given to appellant's testimony unless it was fairly submitted to their consideration under appropriate instructions.

"The court has no discretion to withhold instructions appropriate to any theory of the cause sustained by competent evidence." *Smith* v. *State,* 50 Ark. 545. See also *White River L. & W. Ry. Co.* v. *Star Ranch & Land Co.,* 77 Ark. 128.

There is no error when there is a correct general charge and no specific instructions in proper form are requested. *Western Coal & Mining Co.* v. *Jones,* 75 Ark. 76; *Fordyce* v. *Jackson,* 56 Ark. 594; *McGee* v. *Smitherman,* 69 Ark. 632; *Western Union Tel. Co.* v. *Ford,* 77 Ark. 531; Hughes on Instructions to Juries, § 7.

The application of these principles to the instructions in question call for a reversal of the cause.

3. The instruction on the measure of damage is criticised for containing an element of permanent impairment of ability to earn a livelihood, and it is claimed that there was no evidence

to prove permanence of the disability. The evidence of it is meagre, and has to be gathered largely from inference if at all. An instruction should contain no element of damage not covered by evidence.

4. There is also an exception made to the argument of counsel. It is hardly to be supposed that the argument will be repeated on another trial; but attention is called to the case of *Reese* v. *State,* 76 Ark. 39.

For errors indicated, the cause is reversed and remanded.