## GRAHAM *v*. THRALL.

### Opinion delivered June 6, 1910.

1. TRIAL—DIRECTING VERDICT.—In determining upon appeal the correctness of the trial court's action in directing a verdict for either party, the rule is to give to the testimony in behalf of the party against whom the verdict is directed its strongest probative force in his favor. (Page 561.)

2. MASTER AND SERVANT—ASSUMED RISKS.—A servant assumes all obvious risks of the work in which he is employed, including the risk of injury from the manner in which he sees that the work is being done. (Page 562.)

3. SAME—NEGLIGENCE OF FELLOW SERVANT.—The common law rule that a master is not bound to indemnify one servant for injuries caused by the negligence of a fellow servant has not been changed in the case of a partnership employing servants. (Page 563.)

4. SAME—ASSUMED RISKS.—Where a servant knows the place where he is required to work and the methods which are employed by the master in accomplishing the work, and continues in the employment without complaint, he assumes the risks which may result therefrom. (Page 564.)

5. SAME—ORDINARY RISKS.—Where the risks in the work in which a servant is engaged are constantly changing in regard to the increase or diminuation of his safety, such risks are regarded as being the ordinary dangers of the employment, and are assumed by him. (Page 565.)

Appeal from Pike Circuit Court; *James S. Steel*, Judge; affirmed.

*W. P. Feazel* and *McMillan & McMillan*, for appellant.

A master is liable for the negligence of a vice principal concurring with that of a fellow servant. 88 Ark. 37; 67 Ark. 1. Appellant did not assume the risk of the danger. 77 Ark. 374; 90 Ark. 228; *Id.* 567; 89 Ark. 427; 88 Ark. 548; 87 Ark. 321; *Id.* 396; 79 Ark. 56; 86 Ark. 514. Directing a verdict for defendant was error. 88 Ark. 28; 73 Ark. 560; 71 Ark. 447; 76 Ark. 522; 89 Ark. 534; 89 Ark. 222; *Id.* 372.

*T. D. Wynne*, for appellee.

There was no controverted fact to be passed upon by the jury. 41 Ark. 382; Wood on Master and Servant, § § 326-8 and 335; 57 Ark. 461; Hughes on Inst. 120; 127 Wis. 550; 7 Am. & Eng. Ann. Cas. 457; 58 Ark. 217.

FRAUENTHAL, J. This was an action instituted by G. N. Graham, the plaintiff below, to recover damages for a personal

injury which he alleged he sustained while in the employment of the defendants. The defendants, F. E. Thrall and Stephen Shea, were the members of a partnership, which was doing business under the firm name of Thrall & Shea. They were engaged in the construction and equipment of a large sawmill plant, and had employed a number of laborers in doing this work, amongst whom was the plaintiff. One of these laborers permitted a large chain to fall from a considerable height upon plaintiff's hand, injuring his fingers to such an extent that one of them had to be amputated.

Upon the trial of the case, the lower court, after the introduction of all the testimony, directed the jury to return a verdict in favor of the defendants, which was done; and from this action of the court the plaintiff has appealed. In testing the trial court's action in thus directing a verdict for the defendants we will upon this appeal consider the testimony in its most favorable aspect to the plaintiff. For, in determining, upon appeal to this court, whether or not the trial court was correct in directing a verdict in favor of either party, the rule is to give the testimony in behalf of the party against whom the verdict is directed its strongest probative force in his favor. *Neal* v. *St. Louis, I. M. & S. Ry. Co.,* 71 Ark. 447; *Rodgers* v. *C. O. & G. Ry. Co.,* 76 Ark. 522; *Oliver* v. *Fort Smith Light & Traction Co.,* 89 Ark. 222; *Jones* v. *Lewis,* 89 Ark. 372.

Considering the testimony adduced on the trial in this manner, the case, in substance, is this: The plaintiff had been in the employment of the defendants in the construction of the mill plant some time prior to the day of the injury. He was employed as a laborer to carry piping and timbers and to assist in raising the same to the place where they were desired in the building. On the day of the injury he was working with a crew of men who were engaged in raising and adjusting some piping which was necessary for the equipment of the boilers to be used in the operation of the plant. A pile of this piping was placed a short distance from the building, and the men of this crew carried the piping to the boiler, whence it was raised to the place desired. A piping was carried to the boilers by a number of the laborers by means of hand sticks or spikes placed thereunder. It was then raised by tackle blocks by means of a chain which was let down and attached to the piping. It

appears that above the boilers were iron girders about four inches in width extending from one side of the building to the other, and sometimes the chain was carried upon these girders from one point to another as it was needed in raising the piping. On this occasion the plaintiff and other members of his crew had carried a piping to the boiler, and the plaintiff had left his hand stick lying thereunder. These men then went to a place on top of the boilers, but were soon directed to go down and get another piping. At this time one of the members of the crew named Sullivan was moving the chain along the girder above the boilers from one end to the other in order to use the chain in raising the piping which had been placed at the foot of the boilers. In going after the second piping the other men went down from the top of the boilers by means of a stairway, but the plaintiff went down between the boilers by means of hand holds and proceeded, as he claimed, to the first piping, which had been laid at the foot of the boilers in order to get his hand stick. This first piping was immediately under the girder upon which Sullivan was moving the chain. The plaintiff testified that Sullivan moved the chain along the girder with his feet while he held to the rafters above him with his hands; and that he saw him thus begin to move the chain as he started down after the hand stick and saw him afterwards move it along the girder. The plaintiff went immediately under this girder to get his hand stick, and while he was in the act of getting it the chain fell from the girder on plaintiff's hand, injuring it as above stated.

In their answer the defendants pleaded, and now contend, that under the uncontroverted testimony in the case the injury which the plaintiff received was due to the risk which was ordinarily incident to the employment in which he was engaged, and which he therefore assumed; and also that plaintiff was himself guilty of negligence which contributed to the cause of the injury. It is well settled that a servant does, in accepting and continuing in the employment, assume all the ordinary and usual hazards incident thereto and also all the risks which he knows to exist. By his contract of service he impliedly agrees to bear the risk of all dangers that are ordinarily incident to the employment, and consequently he can not recover for injuries which result to him therefrom. He thus assumes all

obvious risks of the work in which he is employed, including the risk of injury from the manner in which he knowingly sees and observes that the business is being operated and the work done. *Southwestern Tel. Co.* v. *Woughter*, 56 Ark. 206; *St. Louis, I. M. & S. Ry. Co.* v. *Tuohey*, 67 Ark. 209; *Archer-Foster Construction Co.* v. *Vaughan*, 79 Ark. 20; *Choctaw, O. & G. Ry. Co.* v. *Thompson*, 82 Ark. 11; *Arkansas Mid. Ry. Co.* v. *Worden*, 90 Ark. 407; 1 Labatt on Master and Servant, § 259.

It has been usually held that one of the ordinary risks incident to the employment, and one assumed by the servant, is the negligence of a fellow servant. But, whether based upon that ground or from other reasons, the rule of law is well settled that a master is not bound to indemnify one servant for injuries caused by the negligence of a fellow servant. This rule has been modified in this State by the act of the Legislature of March 8, 1907 (Acts 1907, p. 162), when applied to a corporation employing servants; but this act does not affect this rule when the employers, as in the case at bar, are the individual members of a partnership. In the case of *Hough* v. *Texas & Pac. Rd. Co.*, 100 U. S. 213, the Supreme Court of the United States approves the following rule relative to the exemption from liability of a master for injuries caused by the negligence of a fellow servant, announced by Chief Justice Shaw in *Farwell* v. *Boston & W. Rd. Corp.*, 4 Met. 49: "The general rule, resulting from considerations as well of justice as of policy, is that he who engages in the employment of another for the performance of specified duties and services for compensation takes upon himself the natural and ordinary risks and perils incident to the performance of such services; and in legal contemplation the compensation is adjusted accordingly. And we are not aware of any principle which should except the perils arising from the carelessness and negligence of those who are in the same employment." *Railway Co.* v. *Triplett*, 54 Ark. 289; *St. Louis S. W. Ry. Co.* v. *Henson*, 61 Ark. 302; *Kennefick-Hammond Co.* v. *Rohr*, 77 Ark. 290; *McGrory* v. *Ultima Thule, Ark. & Miss. Ry. Co.*, 90 Ark. 210; 2 Labatt on Master and Servant, § 470.

The evidence in the case most favorable to the plaintiff shows that the injury which he sustained was caused by the negligence of Sullivan, who was a fellow servant. These two servants were employed by the same master to accomplish one

object. They were both engaged in the discharge of the duty of placing the piping at the points upon the boilers where desired, and were under the control of the same directing official. While thus engaged in the performance of duties which were directed to the attainment of the same end, Sullivan negligently let the chain fall upon the plaintiff's hand. The cause of the injury was therefore due to the negligence of a fellow servant.

But it is urged by counsel for plaintiff that, while the servant assumes the risks ordinarily incident to the employment, he does not assume the risk of danger caused by the master's negligence. It is contended that it is the duty of the master to furnish to the servant a safe place in which to work and safe appliances with which to work, and in failing to observe this duty the master is guilty of negligence. It is urged that the iron girder upon which Sullivan moved the chain was not a safe place upon which to do the work; that a platform or scaffold should have been furnished; and that the defendants, in failing to furnish this servant such a place on which to carry the chain, was guilty of negligence that caused the injury. But, even if the failure to furnish such a platform should be considered an act of negligence on the part of the defendants, still the uncontroverted evidence shows that the plaintiff knew the method in which the work was being done; that he was aware of the manner in which the chain was being moved along the girder and appreciated all risks that arose therefrom; and after such knowledge he still continued in the employment without objection. In *Emma Cotton Seed Oil Co.* v. *Hale*, 56 Ark. 232, this court said: "If, having sufficient intelligence and knowledge to enable him to see and appreciate the dangers to which he will be exposed, he knowingly assents to occupy a place set apart for him by the master, and he does so, he thereby assumes the risks incident thereto, and dispenses with the obligation of the master to furnish him with a better place. It is then no longer a question of whether such place could not with reasonable care and diligence be made safe. Having voluntarily accepted the place occupied by him, he can not hold the master liable for injuries received by him because the place was not safe." The servant assumes the risks of his employment which are open to ordinary observation; and where he knows the methods that are adopted, the place furnished in which to do the work

and the manner in which it is done, and continues in the employment without complaint, he assumes the risks which may result from such known methods and defects, if any. *Railway Company* v. *Kelton*, 55 Ark. 483; *Patterson Coal Co.* v. *Poe*, 81 Ark. 343; *St. Louis, I. M. & S. Ry. Co.* v. *Mangan*, 86 Ark. 507; *St. Louis, I. M. & S. Ry. Co.* v. *Birch*, 89 Ark. 424; *St. Louis, I. M. & S. Ry. Co.* v. *Goins*, 90 Ark. 387.

Furthermore, in the progress of the work in which the plaintiff and his co-laborers were engaged, the risks were constantly changing in regard to the increase or diminution of safety; the place of work was necessarily changed frequently in the progress of the work; the safety of such place of work was necessarily at times increased or diminished. The risks which thus arise as the work progresses are regarded as being the ordinary dangers of the employment; and the failure under such circumstances on the part of the master to furnish a safe place is one of the risks assumed by the servant in his acceptance of and continuing in the employment. If it could be said, under the testimony of the plaintiff, that the injury was due to any negligence on the part of the defendants or their representatives in charge of the work or in control of this crew of men, still the uncontroverted evidence shows that the plaintiff was fully aware of such negligence and appreciated the dangers arising therefrom.

Under the testimony adduced in this case most favorable to the cause of the plaintiff, we are of opinion that the injury which he received occurred by reason of a risk which under the law he assumed.

The lower court did not err in directing a verdict in favor of defendants.

The judgment is affirmed.