## WALSH v. EUBANKS.

Opinion delivered January 26, 1931.

*Hardin & Barton,* for appellant.

*J. V. Walker* and *Karl Greenhaw,* for appellee.

BUTLER, J. The appellee, Anton Eubanks, an employee of the appellants, Walsh & Thomas, a partnership, was severely injured in the collision of a truck in which he was riding with a Ford car at a curve in the highway between Brush Creek and Fayetteville in Washington County, Arkansas. The truck was driven by Robert Huckabee, who was also an employee of the appellant. To recover damages for this injury, suit was brought by the appellee against the appellant in the circuit court of said county. The complaint alleged in substance that the plaintiff and the truck driver were servants of the defendant, a partnership, and that, while in the performance of the master's business, he suffered the injuries complained of, which injuries were the direct and proximate result of the negligence of the truck driver. A demurrer was filed to the complaint, and on its being overruled the defendant answered denying the material allegations of the complaint and pleading as a further defense contributory negligence, assumption of risk, and invoking the fellow-servant doctrine. The case is here properly on appeal from a verdict and judgment for the plaintiff in the court below for $3,000.

There is but little, if any, conflict in the testimony of the witnesses, and the following state of facts may be

said to be established by the uncontradicted evidence.
Walsh & Thomas were partners, and as such had a contract to build a structure composed of reinforced concrete, called in the testimony a "culvert," across Brush
Creek on a highway leading from the town of Fayetteville. They had hired a number of employees for that
purpose, and engaged in the construction of said culvert.
Mr. Walsh, who had general supervision of the business
of the partnership, found it necessary to be absent from
this particular job for a short time and to take with him
the foreman. One Worth James, an employee, was left
in charge of the work and was told by Mr. Walsh that a
carload of cement was expected at Fayetteville, and that
when he was notified by the truck driver of its arrival to
take some of the laborers and unload the car into a warehouse, from which it was to be transported by truck to
the Brush Creek job to be used in making concrete for
the culvert. John Huckabee was one of the employees of
Walsh & Thomas. His duties were varied. He "made
forms" into which the concrete mixture was poured; he
operated the "concrete mixer" and drove the truck and
was thought by the appellant to be a suitable person to
"break in" a new truck. For some time before the
accident he had been hauling material for use on the
Brush Creek job, and on the day of the accident he
brought a load of cement to the point of work where it
was unloaded by Huckabee and the other employees. He
notified James that the car of cement expected had
arrived at Fayetteville. The appellee was another employee of the appellant, and both he and Huckabee were
hired by Mr. Walsh. How long he had been working for
the partnership or just what specific things he had been
doing were not directly shown, but his duties appeared
to have been any kind of common labor necessary for the
carrying on of the work. He had driven the truck for
a while when Huckabee was sick, but had been for some
time previous to his injury engaged in work at and upon
the construction of the culvert.

When Huckabee arrived with his load of cement and gave notice of the arrival of the car, James selected three men besides himself, one of whom was the appellee, and returned on the truck to Fayetteville. These four, with Huckabee, were to unload the cement from the car, and the latter was to then haul it to where it was to be used in the culvert. Two of the men got in and remained in the body of the truck; Huckabee, the driver, took his position at the wheel; the appellee sat on the driver's seat on the right-hand side, and James sat between the two. After the trip began, because of the lack of a windshield, James and the appellee drew their hats forward to protect their eyes and the appellee said to the driver, "Now, Huckabee, none of us are in a hurry—take your time." Just how far the truck had proceeded on its way is not clear, nor is it material, but at a point about three miles from the job as the truck was entering upon a curve in the highway a Ford car, approaching from the opposite direction, appeared on the curve. The testimony of those who were in the truck, except that of the driver, (and there is no serious conflict between the testimony given by him and that of the others) was that at this time the truck was being driven at a high rate of speed, estimated at between forty and fifty miles per hour, and was keeping the center of the highway so that, although the Ford was on its right and proper side of the road, to avoid coming in contact with it, it was necessary for the truck to be at once and sharply turned to the right. In making this turn the truck was in danger of running down the embankment, and, after turning to the right to escape this consequence, the driver turned back toward the left and into the highway. The result was that the front part of the Ford and the rear of the truck collided, the latter being overturned and the appellee and others riding therein seriously injured. The fault lay entirely with the truck driver, as it is the undisputed evidence that the driver of the Ford was driving at a moderate rate of speed and kept as far to the right as prudence allowed.

The sufficiency of the evidence to establish the negligence of the truck driver, the extent of appellee's injury and the amount of the verdict is not seriously questioned. The sole contention made here by the appellant is that the allegations of the complaint fail to state a cause of action in that it complained of an injury inflicted by a fellow-servant for whose negligent acts his master was not responsible; that, if this did not sufficiently appear from the complaint itself, the proved facts established that state of case. To support this view, counsel for the appellant have cited numerous decisions of this and other courts, while, to controvert this view, counsel for appellee have countered with an array of authority of equal dignity and support their interpretation of the cases cited with persuasive argument. However, the principle involved here which exempts the master for liability for an injury to a servant occasioned by the negligence of a fellow-servant has long been settled in this State, and is so clearly stated in our decisions which find support in the weight of authority, that as to it there can be, and is, no conflict of opinion. The reason for that rule and its definition finds no better expression than in the cases of *St. L. A. & T. Ry. Co.* v. *Triplett,* 54 Ark. 289, 15 S. W. 831, 16 S. W. 266, and *Kenefick-Hammond Co.* v. *Rohr,* 77 Ark. 290, 91 S. W. 179.

The doctrine enunciated in those cases has been adopted and followed by this court in a number of decisions, and in the Triplett case is thus stated: "The true reason on which the rule is based, as shown by the great weight of authority, is that a person who voluntarily engages in the service of another presumably assumes all the risks ordinarily incident to that service, and fixes his compensation with a view to such risks. (Citing cases.)

"If this be the principle underlying the rule, it would seem that the question which forms a test in any case is one of risks. And that where one servant is shown to have been injured by another, the question is,

not whether the two servants were fellow-servants in any technical sense of the term, but whether the injury was within the risk ordinarily incident to the service undertaken. 'The negligence of a fellow-workman engaged upon a common work is commonly accounted among the risks undertaken, but is only a subordinate instance.' *Lawler* v. *Androscoggin R. Co.*, 16 Am. Rep. 498.

" 'A fellow-servant,' says the court in *McAndrews* v. *Burns*, 39 N. J. L. 117, 'is any one who serves and is controlled by the same master. Common employment is service of such kind that, in the exercise of ordinary sagacity, all who engage in it may be able to forsee, when accepting it, that through the carelessness of fellow-servants it may probably expose them to injury.' "

And in the case of *Kenefick-Hammond Co.* v. *Rohr, supra,* after quoting with approval the rule announced in *Ry. Co.* v. *Triplett, supra,* it is said: "Persons employed by the same master to accomplish one common object and so related in their labors performed in the service of the master as ordinarily to be exposed to injuries caused by each other's negligence are fellow-servants." Among the cases approving, illustrating and applying the rule are *Fones* v. *Phillips,* 39 Ark. 17, 43 Am. Rep. 264; *St. L. S. W. Ry. Co.* v. *Henson,* 61 Ark. 302, 32 S. W. 1079; *St. Louis I. M. & S. Ry. Co.* v. *Brown,* 67 Ark. 295, 54 S. W. 865; *Snellen* v. *Kansas City So. Ry. Co.,* 82 Ark. 334, 102 S. W. 193; *Texarkana Tel. Co.* v. *Pemberton,* 86 Ark. 329, 334, 11 S. W. 257; *St. L. I. M. & S. R. Co.* v. *Gaines,* 46 Ark. 455; *Graham* v. *Thrall,* 95 Ark. 560, 129 S. W. 532; *Hollingshead* v. *American Ry. Exp. Co.,* 143 Ark. 422, 220 S. W. 462; *Sun Oil Co.* v. *Hedge,* 173 Ark. 730, 293 S. W. 9.

These cases cite many others from other jurisdictions, and it appears that with slight variations the definition stated finds almost universal approval. While this is true, great difficulty arises in applying it to the infinite variety of circumstances which surround particular cases presented to the courts for adjudication.

This is strikingly illustrated in the case at bar where learned counsel for the respective litigants each cite to support their divergent views the same cases.

Here the appellee contends, first, that the negligence was that of a vice-principal, in that the driver of the truck was performing a nondelegable duty of the master and was therefore a vice-principal. It is very true that there are duties which the master owes the servant which he cannot delegate to a fellow-servant and by this means relieve himself from the negligence of the servant in the performance of that act, such as the furnishing of a safe place in which to work, or in the selection of one's fellow-servants, and the like; but we are unable to find any evidence which would indicate that any such duties were delegated to Huckabee. As we read this record he was simply an ordinary laborer in the employ of Walsh & Thomas and aside from his work the only duty he was called on to perform was to convey the information to the workers at the culvert of the arrival of the car of cement.

It is, secondly, insisted that appellee, while having a common master with Huckabee and in a general sense his fellow-servant, was not engaged in a common enterprise with him or in work having such connection with that performed by Huckabee as would include in the risk ordinarily incident to that work the negligence of the latter. Appellee insists that, as he was engaged in various duties at the culvert prior to his injury and Huckabee was at that time hauling by truck the material which he and others would afterward use by converting it into concrete, they were so removed in the performance of their duties from each other that there was and could have been no risk reasonably anticipated to the one through the negligence of the other, and therefore, in accepting the employment, appellee could not be held to the assumption of risk from the possible negligence of Huckabee. The fallacy of this argument appears when the entire testimony relating to the employment is considered.

Both employees were common laborers, and, while for some length of time before the injury appellee's duties were restricted to work at the culvert and that of Huckabee to transporting material from points away from the culvert to it, neither was employed solely for these purposes, but each was to and did perform such other common tasks as they were bidden and at whatever place necessary to carry into effect the common purpose for which they were employed and in which they were both engaged, namely, the construction of a culvert of reinforced concrete across a certain watercourse in Washington County. These facts bring the relationship of appellee and Huckabee within the meaning of the rule and constitute the latter a fellow-servant of the appellee whose negligence was one of the ordinary risks of the employment, and for which the master is not bound.

Under this view of the case the other questions raised become unimportant. The judgment of the court must therefore be reversed, and the case dismissed. It is so ordered.