WILLIAMSON & WILLIAMS *v.* CATES.

Opinion delivered April 6, 1931.

*Buzbee, Pugh & Harrison,* for appellant.

*W. A. Bates* and *Sam T. & Tom Poe,* and *Donald Poe,* for appellee.

BUTLER, J. The appellee sustained an injury to one of his eyes while in the employ of Williamson & Williams, a partnership, which destroyed the sight in one eye and seriously impaired that of the other. He brought suit to recover damages on the theory that the injury was the proximate result of the negligence of his employers in failing to furnish safe tools with which to perform his work, in failing to warn him of unexpected and dangerous acts on the part of a vice-principal, which acts resulted in the injury; and in failing to protect him while he was engaged in his work, and in failing to furnish a safe place in which to perform such work.

At the conclusion of the introduction of the testimony, the appellants moved the court to peremptorily instruct the jury to return a verdict in their favor. This the court refused to do and submitted the case to the jury on instructions which are conceded to be correct if the peremptory instruction was properly refused. The jury found in favor of the appellee in a sum which is also conceded not to have been excessive.

The only question raised on this appeal is as to whether or not the appellants were entitled to a peremp-

tory instruction directing the jury to find a verdict in their favor. The evidence introduced on the part of the appellee tended to establish the following state of case:

Appellants were a partnership, engaged in the construction of a bridge across Fourche River in Scott County, Arkansas, with Roy Benson as the foreman in charge of the work. Appellee is a farmer and also a carpenter, farming being his principal occupation and carpenter work the business he follows in the intervals between the crop seasons. Some few days before the appellee's injury, he was employed by Benson to assist in the construction of the bridge across Fourche River. A day or two later Benson employed one John Mitchell, who was given charge of the workmen in a gravel pit and as to these employees acted as a subforeman under Benson. On the day before the occurrence out of which this litigation arose, Benson accompanied by Mitchell located the site of a road from the gravel pit to the bridge. The road was designed as a way over which to transport gravel from the pit to the bridge, the two being separated by a short distance. The route selected was where an old road ran in which a number of bushes had grown up. Benson directed Mitchell to cut out these bushes close to the ground, and, on the morning of the appellee's injury, told the appellee to go with Mitchell and help him cut the bushes. Mitchell took one John Redding and the appellee and began cutting on one side of a clump of bushes. They had two new axes, both of which had been used only about two hours in the gravel pit, but which were dull. Two of the three workmen would use the axes and the third would move the bushes as they were cut. They would exchange work so that each would cut for a while. Among the bushes to be cut were about fifteen black locust sprouts from one inch in diameter to as large as a man's arm. Just before the injury to the appellee, Redding had been sent by Mitchell to the tool box for some purpose, and during his absence the appellee was cutting down a thorn bush on one side

of the road and Mitchell was cutting toward the other side a few feet away. One of the bushes cut fell so that one of its thorns penetrated appellee's eye.

The evidence, viewed in the light most favorable to the appellee, tends to show that the bush or limb which caused the injury was cut by Mitchell and fell toward the appellee while he was engaged in his work. At the time they were preparing to cut the bushes the appellee called Mitchell's attention to the fact that the axes were dull, and suggested that they be sharpened and asked Mitchell if he had a file. Mitchell replied that there were some files in his car, but that they didn't have time to get them.

From this evidence it is apparent that appellee's allegation of negligence in failing to furnish a safe place in, and tools with, which to work cannot be sustained. The appellee is a farmer, and Mitchell had also worked as a farmer, and such work as they were then engaged in was that of the usual and customary farm life, such as required no skill or experience; the place where the work was to be performed had no latent dangers connected with it, and the danger, if any, was as apparent to the appellee as to any one else. In fact, we fail to see where there was any danger except those unforeseen and unusual perils to which we are subjected at all times and places. The axes were simple tools such as men engaged in appellee's occupation are accustomed to use from boyhood, and the fact that they were dull could in no wise contribute to the happening of the injury, for that was occasioned by the falling of a brush, and the mere fact that it was severed with a dull axe instead of a sharp one could make no difference. As we have seen, appellee must have had knowledge of the use and construction of the axes, as he appears to have been a man of ordinary intelligence. Therefore, there was no duty resting upon the appellants to exercise ordinary care in the selection of the axes, for they were simple tools in ordinary use. *Railway Co.* v. *Kelton*, 55 Ark. 483, 18 S. W. 933; *Mark-*

*ham* v. *Three States Lumber Co.,* 88 Ark. 29, 113 S. W. 357; *Fordyce Lumber Co.* v. *Lynn,* 108 Ark. 377, 158 S. W. 501, 47 L. R. A. (N. S.) 270; *Royal* v. *White Oil Corporation,* 160 Ark. 467, 254 S. W. 819.

If there is any negligence in this case, it was that of John Mitchell while engaged in cutting the bushes in question for which appellee insists that the appellants are responsible on the theory that Mitchell was for the time being the foreman of appellants under whose direction he was working and for whose negligence the appellants are liable. In support of this contention, the appellee argues that the directions were given to him by Benson to report to Mitchell for work, and that, while engaged in the performance of such work, Mitchell was his boss. The most that the evidence shows as to the orders and directions given by Mitchell to the appellee is that Mitchell showed him the place at which he was to work and the character of work to be done, namely, to cut down bushes in an old roadway. Mitchell did not show the appellee how to cut them, for appellee knew this as well as Mitchell himself; nor does the evidence show that the injury occurred because of any direction given on the part of Mitchell as to how appellee should perform his work. Therefore, the injury was not the result of the failure of any duty on the part of Mitchell as the representative of the appellants. The negligence, if any, was the failure of Mitchell to use ordinary care in the performance of work of the same nature as that in which the appellee was at the same time engaged, the execution of which was for a common purpose, *i. e.,* the clearing of the road. In the prosecution of this work Mitchell was but the fellow-servant of appellee.

The facts of the cases cited by the appellee to support his contention that there was a failure of duty on the part of appellants in failing to furnish him safe tools with which, and a safe place in which, to do his work are entirely dissimilar from the facts of the instant case and have no application for the reason that there is no negligence shown except perhaps that of the fellow-serv-

ant. Such being the case, the injury to the appellee was one for which the appellants are not liable. *Graham v. Thrall*, 95 Ark. 560, 129 S. W. 532; *Ry. Co. v. Torrey*, 58 Ark. 217, 24 S. W. 244; *Walsh v. Eubanks, ante* p. 34, 34 S. W. (2d) p. 762.

The court erred in its refusal to grant appellants' prayer for a peremptory instruction. The case is therefore reversed, and the cause dismissed.