HARAWAY *v.* MANCE.

4-2869

Opinion delivered February 13, 1933.

972

*Moore, Daggett & Burke,* for appellant.

*John C. Sheffield,* for appellee.

BUTLER, J. The appellee, Henry Mance, was a negro laborer who lived in the city of West Helena and was employed as a cotton picker on the farm operated by the appellant, Al Haraway, and a Mr. Latten, which farm was about forty miles from Helena. Haraway owned a

Model A, 1½-ton Ford truck which was used to haul cotton pickers from their homes to the plantation and return. This truck was operated by a negro, Granville Shields, who was hired by Haraway to secure cotton pickers, telling them how much they would receive for their work and transporting them to and from the plantation.

On the morning of the 4th of January, 1932, Shields secured about thirty cotton pickers in West Helena, among whom was the appellee, and conveyed them from West Helena to the plantation, where all engaged in picking cotton until about three or four o'clock in the afternoon, when it began to rain. Mr. Latten, whose business it was to weigh and pay for the cotton picked, paid the appellee and the others for the cotton picked that day, and Shields then loaded them into the truck and started on the return journey. On the way there was a collision between the truck driven by Shields and a truck driven by one Harvey Wallace, belonging to and engaged in the business of the Grear Trucking Company, which truck was coming in the opposite direction from that in which the truck driven by Shields was traveling. The appellee was severely injured, and brought suit against both Wallace, the driver of the Grear truck, and the appellant.

The appellee alleged negligence on the part of the drivers of both trucks as the proximate cause of the injury he received. The trial resulted in a verdict and judgment in favor of the appellee against both defendants, from which judgment is this appeal.

For reversal, it is urged that the trial court erred in refusing to direct a verdict for the defendant, Haraway, the grounds for the alleged error being, first, that the appellee and the truck driver employed by the appellant were fellow-servants; second, that the undisputed facts disclosed by the evidence established contributory negligence on the part of the appellee; and, third, that there was no substantial testimony tending to show any negligence on the part of Shields, the driver of the appellant's truck.

1. The appellant insists that the facts in the instant case bring it within the rule announced in *St. Louis, A. & T. Ry. Co.* v. *Triplett,* 54 Ark. 289, 15 S. W. 831, 16 S. W. 266, and therefore there was no responsibility on the part of the appellant for injuries inflicted upon the appellee for the reason that, if there was any negligence on the part of the driver, it was the act of a fellow-servant. The fellow-servant doctrine has been abrogated by statute as to corporations, but still obtains where the employer is an individual or a partnership such as in the case at bar. The important question is whether Shields was the fellow-servant of the appellee. If so, there could be no recovery against the employer for his negligent act. This is well settled by the decisions of this court which, at an early date, recognized the fellow-servant doctrine in the case of *Fones* v. *Phillips,* 39 Ark. 17, 43 Am. Rep. 264, which has been followed and approved in all subsequent cases.

It is not easy to lay down a well-defined rule as to who are and who are not fellow-servants, so that it may be universally applicable. The ordinary definition of fellow-servant is that those engaged under the control of the same master, in the same common business, the purpose of which is to accomplish a single result, are deemed to be fellow-servants, and negligence of one fellow-servant resulting in injury to another fellow-servant will not render the master liable; but, as is said in *Ry. Co.* v. *Triplett, supra,* at page 294: "When we undertake to determine what is essential to render the service common to all, we find the cases numerous and contradictory." It therefore seems that the tests approximately applicable to all cases can be found only in the reason in which the rule itself is based, which is that one who voluntarily engages in the service of another presumably assumes all the risks ordinarily incident to that service, including that of the negligent acts of those who are his fellows while they are engaged in the prosecution of a common purpose, which negligent acts are not the result of some breach of duty which the master primarily and personally owes to

the servant. In regard to the last-mentioned duty, we find also, as in determining who are fellow-servants, no rule which will cover all classes of cases and be of universal application. The generalization which most nearly approaches to it is quoted with approval in *Fones* v. *Phillips, supra,* as follows: "Whenever a master delegates to another the performance of a duty to his servants, which the master has impliedly contracted to perform in person, or which rests upon him as an absolute duty, he is liable for the manner in which that duty is performed by the middleman whom he has selected as his agent, and, to the extent of the discharge of these duties by the middleman, he stands in the place of the master; but, as to all other matters, he is a mere co-servant, and the question is not whether the master reserved oversight and discretion to himself, but whether he did in fact clothe the middleman with power to perform his duties to the servant injured." Wood on Master & Servant, p. 860. This rule was approved by the court in the following language: "This seems to us to embrace all the conditions under which, by the current and superior weight of authority, the master has been held liable for the acts of negligence of one employee, by which another has been injured."

In order to determine the question, we must therefore examine the relation which the evidence showed Shields sustained to the master and to the appellee. On this phase of the case there is no conflict. Shields testified that he was employed by the appellant, Haraway, to drive the truck and transport cotton pickers to and from the plantation; that he would go out in the morning and get a load of people, none of whom he knew by name, and getting different ones each morning; that he would tell those he met that they would receive fifty cents per hundred for picking cotton, and be taken to and from the plantation; that these were all his duties, for which he was paid $1.50 per day by Mr. Haraway, the owner of the truck and the man who had hired him. Appellee testified that he lived in West Helena, and that every morning

Shields was out "hollering for cotton pickers"; that witness asked him what he was paying, and Shields said, "Fifty cents a hundred and carry you there and bring you back."

The testimony of Mance and Shields regarding the duties of the latter was not disputed, and these facts, it is insisted by the appellant, make the fellow-servant doctrine applicable to this case, and that to hold otherwise would call for the abrogation or modification of the rule announced in *Ry. Co.* v. *Triplett, supra,* and in *Walsh* v. *Eubanks,* 183 Ark. 34, 34 S. W. (2d) 762; *Williamson & Williams* v. *Cates, Ib.* 579, 37 S. W. (2d) 88, and *Parham* v. *Parker, Ib.* 674, 37 S. W. (2d) 879. To further sustain this contention, reliance is had on the case of *St. L. S. W. Ry. Co.* v. *Henson,* 61 Ark. 302, 32 S. W. 1079. We do not think, however, that the proved facts in the case at bar bring it within the fellow-servant doctrine; but rather establish a state of case where a duty which the master has impliedly contracted to perform in person is performed by another under authority from the master for whose negligent act the master is liable as if he were present personally and himself breached the duty. In all the cases cited from our court and relied upon by the appellant, there is a marked distinction between them and the instant case. In *St. L. S. W. Ry. Co.* v. *Henson, supra,* the plaintiff was employed by the railroad company in the bridge-building department, and the servant who injured him was an engineer in the transportation department. Plaintiff was furnished a boxcar for his use while engaged in the discharge of his duties, which car was hauled from place to place on the defendant's line whenever necessary. The car, while thus being hauled, was derailed, and the plaintiff injured and a part of his goods destroyed, the immediate result of the negligence of an engineer on another train which occasioned a head-on collision. The court held that the fact that the employees belonged to separate departments was of no consequence other then tending to show whether or not the injury complained of was a risk ordinarily incident to the ser-

vice undertaken. After discussing the relative duties of the two employees, the court concluded as follows: "There was nothing of the master's duty in the work of running the engine. The doctrine announced by this court in *Railway Co.* v. *Triplett,* 54 Ark. 289, [16 S. W. 266, 11 L. R. A. 773], applied to the facts of this record, determines the relation of the plaintiff and the defaulting engineer as that of fellow-servants."

In *Walsh* v. *Eubanks, supra,* the negligent employee, who was held to be a fellow-servant of the one injured, was a common laborer and engaged in performing such duties as he was bidden at whatever place necessary to carry into effect the common purpose for which they were both employed and in which they were both engaged. A part of his duty was to drive a truck to haul material to be used in the work, and, at the time of the injury, he and the employee injured, with other employees, were going from the place of work in a truck driven by him, to unload a car of cement to be used in the construction of the work.

In *Parham* v. *Parker, supra,* it was shown that Parker was employed by Parham and was injured while attempting to board a moving truck in which he and other employees were riding. There was a conflict in the testimony as to who employed the driver and whether he bore any relationship to Parham. The point decided in that case, as stated in the opinion, was that there was "no evidence that the master was guilty of any negligence in any respect," and "this injury occurred when the appellee attempted to get back on the truck while it was moving, and his foot was caught in the wire, causing it to be run over by the truck. It was an unfortunate accident for which no one was liable." The reference in that case regarding liability of a servant injured by the negligent act of a fellow-servant is *dictum.*

In *Williamson & Williams* v. *Cates, supra,* the contention was that one Mitchell was for the time being the foreman of the injured employee under whose direction he was working and for whose negligence the

master was liable. The evidence, however, on that contention was merely that Mitchell showed his fellow-servant the place where they were to work and informed him of the character of the work to be done, which was to cut down bushes. Mitchell did not show his fellow how to cut the bushes, and the injury which resulted was not because of failure of duty on the part of Mitchell as the representative of the master, but the negligence, if any, was the failure of Mitchell to use ordinary care in cutting the bushes at the same time and place with such fellow in which work they were merely fellow-servants.

In the instant case, when the master undertook to transport the laborers from their homes to his plantation and to return them when the day's work was done, there rested upon him the duty imposed by law to exercise ordinary care for their protection, and, while they were not passengers within the common meaning of the term, this duty still remained, and for the breach of such duty he was responsible. *St. L. I. M. & S. Ry. Co.* v. *Harman,* 85 Ark. 503, 109 S. W. 295; *St. L. I. M. & S. Ry. Co.* v. *Wiggam,* 98 Ark. 259, 135 S. W. 889; *Oak Leaf Oil Mill Co.* v. *Smith, Ib.* 34, 135 S. W. 333. The discharge of this duty was intrusted to Granville Shields, who not only acted as the agent of the appellant in the transportation of the laborers, but in the employment of the cotton pickers, and his default was that of the master. *Bloyd* v. *Ry. Co.,* 58 Ark. 66, 22 S. W. 1089; *Bryant Lbr. Co.* v. *Stastney,* 87 Ark. 321, 112 S W. 740; *Archer-Foster Const. Co.* v. *Vaughan,* 79 Ark. 20, 94 S. W. 717; *Western C. & M. Co.* v. *Buchanan,* 82 Ark. 499, 106 S. W. 694; *Headline* v, *G. N. Ry. Co.,* 113 Minn. 74.

In every case in which the facts are clearly established and show precisely what were the respective duties of the injured and delinquent employees and what relation they bore to each other and to the master, it is for the court to say whether or not the negligent employee was a vice-principal or a fellow-servant, and, as such is the state of case in the record before us, the court

did not err in declining to declare the law to be that Shields was the fellow-servant of the appellee.

It will be remembered that the plantation was some forty miles from the home of the appellee, and that, late in the afternoon of a rainy day early in January, 1932, Shields started from the plantation on his return journey to West Helena with a load of cotton pickers. After he had proceeded approximately half of the distance his truck was overturned and badly damaged on account of some happening, the particulars of which the testimony does not disclose. The truck was righted by the driver assisted by the passengers. The sides and top of the truck had been broken, and the debris was piled on the floor of the truck. Into this thirty negro laborers loaded and disposed themselves as best they could. As stated, this was a Model A, 1½-ton truck, and it is apparent that it was overloaded by actual weight, for these thirty negroes must have weighed approximately 1,000 pounds beyond the capacity of the truck. It is reasonable that it must have been difficult for them to find room in the truck even before the wreck and before the broken top and sides of the truck had been piled upon the floor of the same. The evidence shows that some of the laborers were sitting with their feet hanging off the end, some were standing, and others disposed themselves about in various positions. The defendant, with several others, took a place on the left edge of the truck with their legs hanging down on the outside. It is because he took this place and remained in this position as he continued the journey and until he was hurt, that appellant contends he was guilty as a matter of law of contributory negligence.

In considering this contention, it must be borne in mind that it seems to have been reasonably necessary for some of those on the truck to ride in this manner and through no fault of theirs. In the first place, it is clear that more persons were invited by appellant's agent to ride on the truck than it could accommodate, and, secondly, the overturning of the truck and the placing of the

wreckage on its floor aggravated the situation and made it still more inconvenient for the laborers to ride upon it. It seems that it was, a choice of two evils which appellee and his companions had to make; either ride on in the place and manner, which as subsequently proved was fraught with danger, or be left on the roadside, far from home, on an inclement winter night to pursue their homeward journey as best they might. Appellee's choice proved disastrous to him, but under the circumstances created through no fault of his, and, in part at least, by appellant's agent, can it be said that all reasonable minds would agree, that no ordinarily prudent person, situated as was appellee, would have acted as he did? As we view the evidence, we are of the opinion that the court below rightly left that question for the jury to answer.

It is contended, in the last place, that the testimony is insufficient to establish any negligence on the part of Shields in the operation of the truck. On this question the evidence is in direct conflict. That on the part of the appellant tends to show that Shields was traveling on his side of the road, and, as he approached the truck of the Grear Company, he swerved still further to the right until his right-hand wheels were off the pavement and on the shoulder of the highway, and that, while in this position, the truck of the Grear Company swung to the wrong side of the road causing the injury to the appellee. All of this is strongly disputed by the driver of the Grear Company truck, and his testimony is corroborated by that of other witnesses to the effect that it was the Grear truck which was being driven on the proper side of the road, and that it was the improper driving of the truck of the appellant which caused the injury. There is other testimony which we think sustains the finding of the jury that they were both negligent, and that this concurring negligence was the proximate cause of the injury.

These were all questions for the jury, which, under well-settled rules, is the sole judge of the credibility of witnesses and the weight to be given their testimony,

and, since there was some substantial evidence to justify the verdict, it must stand.

It follows that the judgment of the trial court is correct, and it is therefore affirmed.