HILL *v.* HARDY.

4-6538        157 S. W. 2d 494

Opinion delivered December 15, 1941.

*Buzbee, Harrison & Wright,* for appellant.

*R. W. Robins,* for appellee.

GREENHAW, J. The appellees, Reba M. Hardy and James Hardy, a minor, brought suit in the Faulkner circuit court against the appellant, D. B. Hill, operating as D. B. Hill Construction Company, and Cliff Davidson, for damages by reason of the death of Wilbur Marco Hardy, the husband and father, respectively, of the appellees herein, due to the negligence of the appellant.

The complaint alleged that the plaintiffs were residents of Faulkner county, Arkansas; that on August 2,

1940, Wilbur Marco Hardy was employed by D. B. Hill, doing business as D. B. Hill Construction Company, to assist in doing certain road work in Cross county, Arkansas, and while engaged in said work he was struck and run over by a large and heavy grader and road building machine which was then and there negligently operated by the defendants, and was terribly crushed, mangled and killed solely by the negligence of the defendants, in that said heavy machine was negligently and without warning suddenly set in motion and caused to run over Wilbur Marco Hardy by the defendant, Cliff Davidson, who was then and there an agent and servant of D. B. Hill; that the defendants were also negligent in parking the machine which killed Hardy in such a manner as to permit it to be started suddenly, and in failing to exercise proper care in so parking the machine as to prevent it from being suddenly or unintentionally started; that the deceased was 31 years of age, had a life expectancy of 30 years and was survived by his widow, Reba M. Hardy, and his only child, James Hardy, 18 months old.

James Hardy's cause of action was prosecuted by his mother as next friend. Each of them sought damages in the sum of $25,000.

The defendant, D. B. Hill, filed a separate answer denying the material allegations of the complaint, and for an affirmative defense stated that Hardy came to his death because of his own negligence or through a risk which he assumed, or because of the negligence of Cliff Davidson, a fellow-servant.

The jury returned the following verdicts: "We, the jury, find for the plaintiff, Reba M. Hardy, and assess damages at $10,000." "We, the jury, find for the plaintiff, James Hardy, and assess damages at $15,000." The appellant filed a motion for a new trial, alleging, in addition to the usual allegations, that the verdict was contrary to the law, to the evidence, and to both the law and the evidence; that the court erred in refusing to direct a verdict for the appellant, in refusing to grant appellant's requested instructions Nos. 2 and 5, and in giving

the appellee's instructions Nos. 1, 3 and 4; and, finally, that the verdicts were excessive. This motion was overruled, exceptions saved and an appeal prayed for and granted.

Only four witnesses testified in this case, the appellee, Mrs. Reba M. Hardy; the funeral director, T. T. Dulan; John McCrackin, a mechanic, and Cliff Davidson, a colored boy whose job was called "grease monkey." No witnesses were introduced by the appellant.

Mrs. Hardy testified that she was 24 years. of age, the widow of Wilbur Marco Hardy, deceased, who was 30 years old at the time of his death, and was working for the appellant, D. B. Hill, as foreman when he was killed on August 2, 1940, at which time he was making $125 per month. The appellee, James Hardy, is a son who was 18 months old when his father was killed.

The funeral director testified that he had charge of preparing the body of Mr. Hardy for burial, and it appeared to have been run over, crushed and mangled by some heavy machine.

James McCrackin testified he was at that time a mechanic for D. B. Hill, had been so employed several years and that the deceased was a road foreman of the tractors and graders when they were out on the job. The machines were assembled there in the morning before they were taken out on the job. On the morning in question he and the deceased went out to the machines about 6 o'clock. The last time he saw the deceased he was squatted by a heavy Tournapull, which is a dirt scraper behind two large wheels about five feet high, and weighs more than five tons. He heard someone hollering and went and found the deceased under the right front wheel of the Tournapull, badly crushed. The Turnapull machine had been parked and the scraper had not been let down on the ground, and the machine was left in gear. It should not have been left in gear, and the scraper should have been let down on the ground. The motor starts with an electric starter, the starter button being on the dash board similar to an automobile. In greasing the machine it was not necessary for a workman to put his leg around and touch the starter button.

He further testified that Cliff Davidson, who is called a "grease monkey," was greasing the machine at the time. He stayed on the job all night. He did not see Hardy working around the machine. Hardy had been employed about three years and Davidson about two and one-half years. The machine was parked on a slight down grade, and the machine was standing still the last time he saw Hardy. Hardy had no control over Davidson or over the greasing of the machine. They were distinct jobs. Hardy had control over the machines when they were in operation on the job. Hardy looked at the machine and squatted down on this occasion, but he did not know what Hardy was doing in front of the machine.

Cliff Davidson, colored, testified that he was night watchman and "grease monkey" for D. B. Hill, and was 23 years of age; that Hardy was run over by the Turnapull. He saw Hardy squatted down in front of the Turnapull before he was injured, and the next time he saw him he was pinned under the wheel. At the time, he was up in the cab greasing machinery, and while he was greasing the steering wheel, he stepped over and the roll on his pants caught the starter on the dash-board; in trying to get loose he pulled the starter button, which caused the machine to go forward; that it was not his duty to take the machine out of gear. He did not pay any attention to whether it was in gear, and did not know whether it was supposed to be in gear, nor how it happened to be in gear. He had charge of the machine at night and greased them every day. This machine was not running at the time. The night crew had quit at 4:30 in the morning and left it standing there, and it had been there about an hour before he got to it.

It was stipulated that the deceased had a life expectancy of 29 years.

The court did not err in refusing to direct a verdict for the appellant, nor in giving appellee's requested instructions Nos. 1, 3 and 4. These instructions contained proper declarations of law under the evidence in this case. The court properly instructed the jury with reference to contributory negligence, and the jury, as reflected by its

verdicts, found that Hardy was not guilty of contributory negligence.

The appellant insists that the court erred in refusing to give his requested instructions Nos. 2 and 5. One of these instructions defined the elements necessary to constitute Hardy a fellow-servant with Cliff Davidson, the colored "grease monkey" and night watchman. The other told the jury that if it found from the evidence that Cliff Davidson was a fellow-servant of Wilbur Marco Hardy and Hardy was killed through the negligence of Davidson, the jury must return a verdict for the appellant. We do not think the court erred in refusing to give either of these instructions regarding fellow-servants.

The undisputed evidence showed that the deceased was a road foreman, his work being entirely on the highway in construction work, while the negro's work was confined exclusively to greasing machinery and acting as a night watchman. There was no evidence that they ever worked together or were in any manner associated together in work for the appellant. They were not engaged in a common business, nor were they engaged in accomplishing a single result. The negro was engaged in greasing a machine that had just been used and brought in by the night crew, and his purpose was to accomplish the greasing of this machine. Hardy was not engaged in greasing machines, but he was in charge of a crew of men working with various kinds of tools and machines out on the highway, and the thing he was seeking to accomplish was highway construction.

The appellant offered no testimony when appellees rested. There was no conflict in the testimony as to the relationship of Davidson and Hardy—there was no dispute about it for the jury to settle. They were in different grades of employment, and were doing entirely different kinds of work. Under the facts in evidence, it was not error for the lower court to refuse to submit to the jury the defense based on the fellow-servant rule. To have done so, in our opinion, would have permitted the jury to speculate upon this question without sufficient evidence

to justify it in finding that the fellow-servant rule was applicable.

"An instruction upon an issue not sustained by the evidence was properly refused." *St. Louis Southwestern Ry. Co.* v. *Phoenix Cotton Oil Co.,* 88 Ark. 594, 115 S. W. 393 (syllabus).

In approving the action of the lower court which had held that, as a matter of law, a saleswoman was not a "fellow-servant of the operator of an elevator in a dry-goods store, the supreme court of California, in the case of *Judd* v. *Letts,* 158 Cal. 339, 111 Pac. 12, 41 L. R. A., N. S., 156, said: "But where the facts are such that reasonable minds could not differ as to the conclusion, the question becomes one of law for the court."

In the case of *Haraway* v. *Mance,* 186 Ark. 971, 56 S. W. 2d 1023, it was contended that the driver of a truck, in which men were being transported for the purpose of picking cotton for the owner of the truck, was a fellow-servant with one of the cotton-pickers who was injured while being transported in the truck. This court, in an opinion by the late Justice BUTLER, held that the injured cotton-picker and the truck driver were not fellow-servants, and there said: "In every case in which the facts are clearly established and show precisely what were the respective duties of the injured and delinquent employees and what relation they bore to each other and to the master, it is for the court to say whether or not the negligent employee was a vice-principal or a fellow-servant. . . ."

In this same case the court further said: "It is not easy to lay down a well defined rule as to who are and who are not fellow-servants, so that it may be universally applicable. The ordinary definition of fellow-servants is that those engaged under the control of the same master, in the same common business, the purpose of which is to accomplish a single result, are deemed to be fellow-servants, and negligence of one fellow-servant resulting in injury to another fellow-servant will not render the master liable; but, as said in *Ry. Co.* v. *Triplett,* 54 Ark. 289, 15 S. W. 831, 16 S. W. 266: 'When we undertake,

to determine what is essential to render the service common to all, we find the cases numerous and contradictory'." The cases of *French* v. *Cherry,* 186 Ark. 991, 57 S. W. 2d 404, and *Jolly* v. *Smith,* 188 Ark. 446, 65 S. W. 2d 908, are similar and to the same effect.

Therefore, under the undisputed evidence, we have concluded that the deceased was not a fellow-servant of the night watchman and "grease monkey," Cliff Davidson. It is not seriously contended that there was no neg-ligence in this case. In our opinion the undisputed evidence shows there was negligence for which the appellant is liable. The verdicts of the jury were based upon substantial evidence, and the jury was warranted in finding that the death of Wilbur Marco Hardy was the proximate result of the negligence of the appellant.

Lastly, it is contended that the verdicts are excessive. We cannot agree with this contention. The evidence showed that the deceased was a young man, earning at the time $125 per month, with a life expectancy of 29 years. His widow was only 24 years of age, and his son only 18 months of age at the time of the father's death. The death of the husband and father has not only deprived the appellees of the financial contributions and assistance which he no doubt would have made over a period of many years, but the widow has been deprived of his companionship and association, and the infant son of that companionship, association and paternal guidance, assistance and solicitude which it is difficult to estimate in dollars and cents.

No error appearing, the judgments are affirmed.

SMITH, J., (dissenting in part). It appears to me that the judgment in favor of the infant son is grossly excessive and should be materially reduced. Hardy was earning $125 per month. He was absent from home much of the time, and the record does not show what his expenses were or must have been. The record is silent also as to the capacity and inclination of Hardy to give his son mental and moral training. The record shows only that he supported his wife and son. As a matter of law, Hardy would have been entitled to the earnings

of his son during the son's minority. We have affirmed many judgments allowing the father to recover the value of these services where the infant was killed. But the infant here was not killed. He has recovered what should be the value of his father's contributions for his support.

In the state of this record, an allowance, out of the father's earnings for. the benefit of the son, of $25 per month appears reasonable, and any allowance in excess of that sum is speculative and unsupported by any testimony. A calculation made, the accuracy of which is not questioned, shows that the present value of a recovery to the son of $25 per month, for 234 months, or 19½ years, the period of minority, discounted at the legal rate, computed annually, is $3,502.51. There is no proof of probability of increased earning capacity, or of increased contributions, and no testimony showing that the financial loss exceeded the sum of $3,502.51.

The majority set a new standard for the recovery of damages in behalf of minors whose father is killed which must be applied in cases where there is more than one child, if the recovery is not to be limited to the present value of the contributions which the testimony shows would probably be made, including reasonable compensation for the loss of the father's supervision.

The Chief Justice concurs in the views here expressed.

GREENHAW, J., (on rehearing). Upon consideration of this case on rehearing we have reached the conclusion that the judgment of $15,000 in favor of James Hardy, the infant son, is excessive, and should be reduced to $7,500. The record shows that the deceased supported his wife and son. As a matter of law the deceased, had he lived, would have been entitled to the earnings of his son during the son's minority. James has been deprived of the father's financial contributions which he could reasonably have expected had the father been alive during such son's minority. He was also deprived of the companionship, association, and paternal supervision of the father. While it is difficult to estimate in dollars and cents the damage which the infant son has sustained in the death of his father, we have concluded that a judg-

ment for the son in any amount over $7,500 in this case is excessive, when measured by rules established by former decisions.

The petition for rehearing, in so far as it relates to the excessiveness of the judgment in favor of the son, is sustained. The judgment in favor of James Hardy is, therefore, modified by reducing it to the sum of $7,500, and as thus modified it is affirmed.